UNITED STATES of America, Appellee,

v.

**Benny G. SHRIVER, Appellant.**

**No. 86–2491.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 16, 1987.
Decided Feb. 3, 1988.

HENLEY, Senior Circuit Judge.

Appellant Benny G. Shriver was accused in an indictment of setting fire to his home and music store and attempting to collect fire insurance proceeds; misrepresenting to the insurance company that he had never made a previous claim; and engaging in a conspiracy which resulted in the fire-bombing of a competitor's nightclub known as the "Back Forty" on three separate occasions. In the district court [1] he was convicted by a jury of one count of conspiracy, 18 U.S.C. § 371, six counts of mail fraud, 18 U.S.C. § 1341, two counts of using fire to commit mail fraud, 18 U.S.C. § 844(h), and three counts of using explosives to damage a building used in interstate commerce, 18 U.S.C. § 844(i). Shriver was sentenced to five years imprisonment on the conspiracy count; five years on each of the mail fraud counts, to run concurrently with each other and consecutively to the conspiracy count; and six years on each of the use of fire and explosives counts, to run concurrently with each other and consecutively to the conspiracy and mail fraud sentences. On appeal, Shriver raises fourteen points, only some of which merit discussion.

## DOUBLE JEOPARDY

Shriver contends that his convictions of mail fraud and using fire to commit a felony (mail fraud) violate the double jeopardy clause of the fifth amendment to the United States Constitution. He relies on the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), which held that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Shriver argues that the arson offense requires no proof in addition to that needed to establish the mail fraud. *See, e.g., Garrett v. United States*, 471 U.S. 773, 778, 105 S.Ct. 2407, 2411–12, 85

Robert M. Sweere, Springfield, Mo., for appellant.

Robin J. Aiken, Asst. U.S. Atty., Springfield, Mo., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

1. The Honorable Russell G. Clark, United States District Court, Western District of Missouri, presiding.

L.Ed.2d 764 (1985) (continuing criminal enterprise and underlying predicate offenses are the same for double jeopardy purposes under *Blockburger* analysis); *United States v. Kragness,* 830 F.2d 842, 864 (8th Cir.1987) (RICO and predicate offenses are "same" under *Blockburger*).

We need not reach the merits of Shriver's claim that *Blockburger* applies to his case, however. When applied to a single proceeding, *Blockburger* merely provides a means for statutory interpretation in determining whether the legislature authorized the imposition of separate punishments. *Garrett,* 471 U.S. at 778–79, 105 S.Ct. at 2411–13; *Missouri v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 679–80, 74 L.Ed.2d 535 (1983); *Kragness,* 830 F.2d at 863. "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Hunter,* 459 U.S. at 366, 103 S.Ct. at 678. Thus, "the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress." *Garrett,* 471 U.S. at 779, 105 S.Ct. at 2412.

■ To resolve this issue we need look no further than the legislative history of § 844(h), which expressly reveals that "whoever uses a fire ... to commit any felony which may be prosecuted in a court of the United States commits an additional offense and shall be subject to a sentence in addition to the sentence for the predicate offense." H.R.Rep. No. 678, 97th Cong., 2d Sess. 3, *reprinted in* 1982 U.S.Code Cong. & Admin. News 2631, 2633 (legislative history to the Anti–Arson Act of 1982, Pub.L. 97–298, amending § 844(h) to encompass the use of fire as well as use of explosives). As this passage makes plain, Congress intended that the crimes of using fire to commit a felony and the felony itself may be punished cumulatively, and Shriver's double jeopardy argument must therefore fail.

## USE OF AN EXPLOSIVE TO DESTROY A BUILDING IN INTERSTATE COMMERCE

Appellant urges that we reverse his convictions on the second and third counts of destroying by explosive a building used in interstate commerce. 18 U.S.C. § 844(i). Shriver was convicted of three counts under § 844(i), all relating to three separate incidents in which Shriver's competitor, the Back Forty Lounge, was firebombed. Testimony from Shriver's coconspirators indicated that Shriver wanted the Back Forty burned to keep it from reopening and competing with his own business, the Hitchin' Post. Shriver contends that, because the Back Forty Lounge was closed for business the second and third times it was firebombed, it was not being used in an activity which affects interstate commerce as defined in § 844(i).

We have discussed the reach of that section as follows:

"Section 844(i) uses broad language to define the offense." *Russell v. United States,* [471] U.S. [858, 859], 105 S.Ct. 2455, 2456, 85 L.Ed.2d 829 (1985). "The reference to 'any building ... used in ... any activity affecting interstate or foreign commerce' expresses an intent by Congress to exercise its full power under the Commerce Clause." *Id.* (footnote omitted). "The legislative history indicates that Congress intended to exercise its full power to protect 'business property'." *Id. See United States v. Voss,* 787 F.2d 393, 397 (8th Cir. . . . .), [*cert. denied,* — U.S. ——, 107 S.Ct. 286, 93 L.Ed.2d 261 (1986) ] ("section 844(i) reaches ... arson of any property used in an activity having even a *de minimis* connection to interstate commerce"). It is clear that the destruction of a tavern that receives interstate shipments of liquor, as is the case here, falls within § 844(i). *See United States v. Sweet,* 548 F.2d 198, 202 (7th Cir.), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977).

*United States v. Muza,* 788 F.2d 1309, 1311 (8th Cir.1986).

■ Shriver does not dispute that the Back Forty served beer obtained through interstate commerce, nor does he dispute that its owners were attempting to reopen the Back Forty and reenter the stream of

ter of

interstate commerce. The Back Forty's owners' attempts to rehabilitate the building certainly affected interstate commerce, as the successful reopening would return the establishment to the market place and once again facilitate the import of beer from other states. The business use of the property was not abandoned, but was doggedly pursued by its owners in the face of appellant's repeated attempts to keep the establishment from reopening. We have noted elsewhere that the rehabilitation of a business property for future resale may be sufficient to find a nexus to interstate commerce under § 844(i). *United States v. Voss*, 787 F.2d at 399–400. The Eleventh Circuit has similarly held that a business establishment temporarily closed for repairs does not thereby lose its interstate character. *United States v. Shockley*, 741 F.2d 1306, 1307 (11th Cir.1984). Thus, the circumstance that the Back Forty Lounge was closed to the public because of appellant's previous acts of arson cannot work to his benefit, and we reject appellant's contentions on this issue.

## ACCOMPLICE TESTIMONY

Shriver claims error in the trial court's refusal to give a cautionary instruction with respect to accomplice testimony. Shriver's accomplices, Douglas McQueen and Rudy Haldiman, both received promises from the government that their testimony in Shriver's trial would not be used against them in a criminal trial. Shriver requested, but was refused, an instruction to the effect that the jury should regard the accomplice testimony with greater caution than that of ordinary witnesses.

Instructions similar to the one requested by appellant have received the approval of the Supreme Court as "the better practice." *Caminetti v. United States*, 242 U.S. 470, 495, 37 S.Ct. 192, 198, 61 L.Ed. 442 (1917). Nevertheless, in construing *Caminetti* we have held that no "absolute and mandatory duty is imposed upon the court to advise the jury by instruction that they should consider the testimony of an uncorroborated accomplice with caution." *Esters v. United States*, 260 F.2d 393, 397 (8th Cir.1958); *accord, Sachs v. United States*, 412 F.2d 357, 367 (8th Cir.) (failure to give cautionary instruction not reversible error), *cert. denied*, 396 U.S. 906, 90 S.Ct. 220, 24 L.Ed.2d 182 (1969); *Stoneking v. United States*, 232 F.2d 385, 391–92 (8th Cir.) (same), *cert. denied*, 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54 (1956). *But see McLendon v. United States*, 19 F.2d 465, 466 (8th Cir.1927). Cases from other circuits cited by appellant do not compel a different result. In *United States v. Swiderski*, 539 F.2d 854, 860 (2d Cir.1976), the Second Circuit discussed the advisability of a cautionary instruction, but expressly declined to decide whether the failure to give the instruction was reversible error as the case was disposed of on a different ground. In *United States v. Davis*, 439 F.2d 1105 (9th Cir.1971), the accomplice had given "contradictory stories in an apparent attempt to inculpate a defendant," *id.* at 1107; no allegation of a similar nature is raised here. Nor do we find this a particularly close case, such as that which prompted reversal in *Tillery v. United States*, 411 F.2d 644, 647 (5th Cir.1969). Finally, we decline to follow the rule in the Tenth Circuit, which holds that failure to give the instruction is plain error. *United States v. Hill*, 627 F.2d 1052, 1053 (10th Cir.1980). As already explained, our own precedent, which derives from this court's reading of the Supreme Court's decision in *Caminetti*, is clearly to the contrary.

In addition, we note that the trial judge did apprise the jury that McQueen and Haldiman had pleaded guilty, that the jury should not take their guilty pleas as evidence against Shriver, and that the jury should consider the pleas only for the purpose of determining the weight, if any, to be given the testimony of McQueen and Haldiman. The trial court also generally instructed the jury to consider the witnesses' motives for giving particular testimony. *See Stoneking*, 232 F.2d at 392 (instruction advising jury that they were to be sole judge of accomplices' testimony was adequate).

Moreover, ample corroboration existed to support McQueen and Haldiman. As to

most of the counts, this is so obvious that we need not burden this opinion with the details, since witnesses other than McQueen and Haldiman gave testimony clearly linking Shriver to the crimes charged in the indictment.

■ As to the burning of the Back Forty, little direct evidence beyond the accomplice testimony was presented at trial. Even in jurisdictions requiring corroboration of accomplice testimony, however, circumstantial evidence may be used, and the corroborating evidence need only tend to link the defendant with the crime and may be of little weight when taken alone. *See, e.g., People v. Perry,* 7 Cal.3d 756, 769, 499 P.2d 129, 136, 103 Cal.Rptr. 161, 168 (1972). It was proven to the jury's satisfaction that appellant had conspired with McQueen and Haldiman to set fire to his house and music store in order to obtain funds to invest in his ailing business, the Hitchin' Post. Both the method and motive for those crimes tend to support McQueen's testimony that Shriver wanted to burn down his competitor's business because its success was hurting his own business. Further, independent evidence included a showing that Shriver's business was in fact hurt by competition from the Back Forty. While much of this evidence might have been unconvincing standing alone, in aggregate it was sufficient to corroborate the testimony of McQueen and Haldiman.

## CONCLUSION

Appellant raises several other issues, including the accusation by a witness of an uncharged crime, denial of effective assistance of counsel, prosecution inferences of misconduct by defendant's attorney, prior crime evidence and various other points. None of the claimed errors requires reversal and some of appellant's arguments are patently frivolous. Appellant's convictions are affirmed.