Steven **MUSONE**

v.

**UNITED STATES of America.**

No. C.A. 97–477–T.

United States District Court,
D. Rhode Island.

Sept. 13, 2000.

S. Paul Ryan, East Providence, RI, Cheryl J. Sturm, Westtownster, PA, for Petitioner.

Gerald B. Sullivan, U.S. Attorney's Office, Providence, RI, for Respondent.

## MEMORANDUM AND ORDER

TORRES, Chief Judge.

Steven Musone has moved, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence for a variety of arson-related offenses.

The primary issue presented is whether the imposition of a consecutive sentence under 18 U.S.C. § 844(h)(1) for using fire to commit a felony, violated the Double Jeopardy Clause of the Fifth Amendment.

Because I answer that question in the negative, Musone's motion is denied.

### Background

Musone operated a pizzeria that occupied the first floor of a three-story building. An apartment occupied by a black family consisting of two adults and four children was located on the second level.

Because business was poor, Musone hired a 17-year-old boy to set fire to the pizzeria in order to collect the proceeds of an insurance policy on the building. The fire was set on the night of July 22, 1995; and, fortunately, no one was injured.

Musone pled guilty to all counts of a six-count indictment charging the following offenses:

| Count | Charge |
|---|---|
| I | Conspiracy, in violation of 18 U.S.C. § 371, to commit arson, commit mail fraud, and to use fire to commit a felony. |
| II | Arson (maliciously damaging by fire property used in interstate commerce), in violation of 18 U.S.C. §§ 844(i) and 2 |
| III–V | Mail fraud, in violation of 18 U.S.C. §§ 1341 and 2. |
| VI | Using fire in commission of a felony (i.e., mail fraud), in violation of 18 U.S.C. §§ 844(h)(1) and 2. |

In calculating the offense level prescribed by the United States Sentencing Guidelines for Counts I–V, the "grouping rules" contained in §§ 3D.1.1, et seq. were applied. Pursuant to those rules, Counts I and II (i.e., conspiracy and arson) were grouped together and Counts III–V (i.e., mail fraud) were grouped together. Because the arson offense level was greater than the mail fraud offense level, it was used as the starting point in calculating Musone's sentencing range for all five counts. Furthermore, since there was a considerable difference between the two offense levels, mail fraud was disregarded in making that calculation.

After all pertinent adjustments were made, Musone's guideline range for each of the first five counts of conviction was determined to be 46–57 months. This Court rejected the government's contention that Musone's offense level should have been increased for solicitation of a minor and for obstruction of justice. However, because Musone had involved a minor in his scheme and that he had exhibited a callous disregard for the safety of the building's occupants due, in part, to their

race, the maximum sentence of 57 months was imposed on each of the first five counts. Pursuant to the guidelines, those sentences were made concurrent. The net result was that the combined offense level used in calculating Musone's sentence on the mail fraud counts was greater than the offense level applicable to mail fraud, alone, but less than the sum of the offense levels for arson and mail fraud, separately.

With respect to Count VI, use of fire to commit a felony, the Court imposed the five-year consecutive sentence mandated by § 844(h)(1).

In his § 2255 motion, Musone claims that his counsel was ineffective in failing to pursue an appeal. Musone further claims that the imposition of a consecutive sentence under § 844(h) violates the Double Jeopardy Clause of the Fifth Amendment and that his counsel, also, was ineffective in failing to challenge what Musone contends were multiple punishments for the same offense.[1]

### Factual Findings

In order to resolve Musone's claim that his counsel was ineffective in failing to pursue an appeal, this Court conducted an evidentiary hearing at which Musone and Paul DiMaio, his trial counsel, testified. Based upon the record, my observations of the demeanor of each witness and my assessment of their credibility, I find the relevant facts to be as follows:

On the day that sentence was imposed, the Court expressly informed Musone of his right to appeal and the deadline for filing a notice of appeal. Moreover, Musone briefly discussed the possibility of an appeal with DiMaio while they were seated at the counsel table. In addition, two days later, DiMaio had a detailed discussion with Musone regarding the advisability of pursuing an appeal. At that time, DiMaio cautioned that an appeal could result in a lengthier sentence if the government successfully cross-appealed from the rejection of its arguments regarding the calculation of Musone's offense level. DiMaio also expressed the opinion that there was little likelihood that Musone would prevail on appeal. Accordingly, DiMaio advised Musone not to appeal and informed him that, in any event, DiMaio would not represent Musone on appeal. After hearing that advice, Musone gave no indication whether or not he wished to pursue an appeal.

A day or two later, Musone and DiMaio had another conversation that DiMaio abruptly terminated when Musone blamed DiMaio for the fact that Musone was in jail and DiMaio felt that Musone began insulting him. During that conversation there was no discussion regarding a possible appeal and Musone clearly understood that DiMaio would not be filing a notice of appeal on his behalf.

There were no further communications between Musone and DiMaio. Specifically, Musone never asked DiMaio to file a notice of appeal and DiMaio never indicated that he would do so.

Musone claims that he intended to file a notice of appeal, himself, but did not follow up because the time for doing so expired. I find that any desire that Musone might have had to appeal did not arise until much later as evidenced by the fact that his § 2255 motion was not filed until August 20, 1997, one year after sentencing.

### Discussion

I. *Counsel's Failure to Pursue an Appeal*

The Supreme Court has held that an ineffective assistance claim based upon counsel's failure to file a notice of appeal, like any other ineffective assistance claim, must be judged in accordance with the two-pronged test described in *Strickland v. Washington,* 466 U.S. 668, 687–88, 694,

---

1. In his § 2255 motion, Musone also alleges that his sentence violates the Due Process Clause. However, he has failed to brief this issue with any particularity. Similarly, Mu-sone has failed to explain his allegation that his counsel was ineffective during plea negotiations.

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires the petitioner to show that counsel's representation fell below an objective standard of reasonableness and that the petitioner was prejudiced by counsel's deficient performance. *Roe v. Flores–Ortega,* 528 U.S. 470, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985 (2000).

■ In determining whether counsel was deficient in failing to pursue an appeal, the threshold question is whether the defendant expressed his wishes to counsel. If the defendant specifically instructed counsel to file a notice of appeal, counsel's failure to do so is, *per se,* "professionally unreasonable." *Id.* at 1035. On the other hand, "a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.*

■ In cases where the defendant has not clearly conveyed his wishes one way or the other, the relevant inquiry is " 'whether counsel's assistance was reasonable considering all the circumstances.' " *Id.* (*quoting Strickland,* 466 U.S. at 688, 104 S.Ct. 2052). There is no bright line test for making that determination. The Court must, first, ascertain whether counsel "consulted" with the defendant regarding a possible appeal by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* When such consultation takes place, "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* On the other hand, in the absence of such "consultation," the Court must ask "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Id.*

■ Once deficient performance is established, a defendant need not demonstrate that his appeal had merit in order to show that he was prejudiced. *Id.* However-

er, the defendant is required to establish that counsel's inadequate performance deprived him of an appeal that, otherwise, he would have taken. *Id.* at 1038. Accordingly, the defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* Whether such a showing has been made turns on the facts of the particular case. *Id.* at 1039.

■ Here, Musone has failed to demonstrate either that DiMaio's performance was deficient or that DiMaio's conduct deprived Musone of an appeal that, otherwise, he would have taken. DiMaio fully advised Musone about the advantages and disadvantages of taking an appeal and it appears that DiMaio's advice was reasonable under the circumstances. DiMaio also afforded Musone ample opportunity to express a desire to appeal but Musone never did so and he never asked DiMaio to file a notice of appeal.

Moreover, Musone's own conduct, contradicts his professed desire to appeal. As already noted, Musone knew that he had a right to appeal, that there was a time limit for filing a notice of appeal, and that DiMaio did not intend to file a notice of appeal. Nevertheless, Musone remained silent and did nothing until one year later when he filed his § 2255 motion. Consequently, DiMaio's performance did not deprive Musone of an appeal that otherwise he would have taken. Given those facts and the fact that Musone was aware that an appeal presented the risk of a lengthier sentence, it appears that Musone made a deliberate decision not to appeal.

## II. *Double Jeopardy and Multiple Punishments*

Musone's claim that DiMaio was deficient in not challenging Musone's sentence on the ground that it imposed multiple punishments for the same offense turns on the validity of his claim that the consecutive sentence imposed under § 844(h)(1)

for using fire to commit mail fraud violates the Double Jeopardy Clause of the Fifth Amendment. Therefore, these two claims will be considered together.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Supreme Court has construed this provision to prohibit both multiple *prosecutions* and multiple *punishments* for the *same* offense. *Witte v. United States*, 515 U.S. 389, 395–96, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (*quoting United States v. Dixon*, 509 U.S. 688, 704, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).

Under the test enunciated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), two offenses are considered the "same" if they arise from "the same act or transaction" unless each one "require[s] proof of a fact which the other does not."

In determining whether the Double Jeopardy Clause bars *prosecution* for an offense arising from acts for which the defendant previously was prosecuted, the *Blockburger* test is conclusive. Thus, the prosecution is barred unless the statute defining the offense and the statute defining the offense for which the defendant previously was prosecuted each require proof of an element that the other does not. *Id.*

*Blockburger* also is utilized in deciding whether the Double Jeopardy Clause bars multiple *punishments* for an act or transaction that violates two different criminal statutes. However, in the case of multiple *punishments, Blockburger* is not necessarily conclusive.

The *Blockburger* test is dispositive in cases where it does not deem the offenses to be the "same" because that determination renders the Double Jeopardy Clause inapplicable. But the fact that two offenses are deemed to be the "same" under

*Blockburger* does not automatically prohibit the imposition of multiple sentences.

The reason for this seeming dichotomy is that the Double Jeopardy Clause does not limit Congress' constitutional power to authorize cumulative penalties for conduct that violates two different criminal statutes even though the offenses are classified as the "same" under *Blockburger*. *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).[2] As the *Hunter* Court stated: "[S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Id.*

Thus, although the prohibition against multiple *prosecutions* has the effect of preventing multiple punishments for the "same" offense in *successive* proceedings, *see Hudson v. United States*, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee [against double jeopardy] is limited to assuring that the *court* does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)(emphasis added).

In short, courts are not free to decide when multiple punishments may be imposed for different offenses arising out of the same conduct but Congress is. *See Whalen v. United States*, 445 U.S. 684, 695, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Accordingly, in determining whether the Double Jeopardy Clause bars the imposition of consecutive sentences in a case where the defendant has been adjudged guilty of multiple violations arising out of the same act or transaction, the critical inquiry is whether Congress intended to authorize cumulative penalties. *Hunter,*

---

2. Congress, also, may authorize multiple penalties for violation of a single statute. For example, it may make a violation punishable by both a fine and a term of imprisonment. *See Whalen v. United States*, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

459 U.S. at 366, 103 S.Ct. 673; *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981) ("[T]he question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended ... to impose multiple punishments, imposition of such sentence does not violate the Constitution."); *Whalen,* 445 U.S. at 688, 100 S.Ct. 1432 ("Whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishments the Legislative Branch has authorized.").

▪ In this context, the *Blockburger* test is utilized merely as an aid in ascertaining Congressional intent. If *Blockburger* defines two offenses as being the "same," it is presumed that Congress did not intend to authorize cumulative punishments. The test is a rule of statutory construction that "because it serves as a means of discerning Congressional purpose ... should not be controlling where, for example, there is a clear indication of contrary legislative intent." *Albernaz,* 450 U.S. at 340, 101 S.Ct. 1137. Because the *Blockburger* test is a rule of statutory construction rather than a constitutional rule, cumulative punishment is not prohibited if it has been specifically authorized by Congress. *Hunter* at 368, 103 S.Ct. 673 ("The [*Blockburger*] rule of statutory construction ... is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear.").

▪ There is some question as to whether *Blockburger* provides a useful indication of legislative intent in cases involving "compound and predicate" offenses where "one statute incorporates several other offenses by reference and compounds those offenses if a certain additional element is present." *See Whalen,* 445 U.S. at 708, 100 S.Ct. 1432 (Rehnquist, J., dissenting). However, even if the offenses of mail fraud (§ 1341) and using fire to commit a felony (mail fraud) (§ 844(h)(1)) are deemed the "same" offense under *Blockburger,* Congress has expressed a clear intent to both authorize and require consecutive sentences. Section 844(h) expressly provides that an individual who uses fire to commit "*any* felony ... *shall, in addition* to the punishment provided for such felony" be sentenced to an additional term of imprisonment which cannot be made to run concurrently with the term imposed for the underlying felony. *See United States v. Shriver,* 838 F.2d 980 (8th Cir.1988).

Musone argues that, because his guideline range for mail fraud was based on the offense level for arson, he, in effect, received consecutive sentences for arson and using fire to commit arson, two offenses that clearly are the same under *Blockburger,* and that Congress should not be deemed to have intended such a result. However, in *Witte,* the Supreme Court rejected a similar argument but for different reasons.

*Witte* held that the Double Jeopardy Clause does not prevent a defendant from being sentenced for the commission of a crime merely because the conduct on which his conviction was based previously had been taken into account as uncharged conduct in determining the defendant's sentence for a prior offense. The Court stated that:

> [P]etitioner's double jeopardy theory— that consideration of uncharged conduct in arriving at a sentence within the statutorily authorized punishment range constitutes "punishment" for that conduct—is not supported by our precedents, which make clear that a defendant in that situation is punished, for double jeopardy purposes, only for the offense of which the defendant is convicted.

*Witte,* 515 U.S. at 397, 115 S.Ct. 2199.

More specifically, the Court held that principle to be equally applicable in the

context of "guideline" sentencing where a defendant's conviction is based upon conduct previously considered in determining his sentence for a prior offense.

> We are not persuaded by petitioner's suggestion that the Sentencing Guidelines somehow change the constitutional analysis. A defendant has not been "punished" ... for double jeopardy purposes when relevant conduct is included in the calculation of his offense level under the Guidelines ...

*Id.* at 401, 115 S.Ct. 2199.

In short, *Witte* makes it clear that increasing a defendant's guideline offense level on the basis of uncharged conduct does not constitute "punishment" for that conduct within the meaning of the Double Jeopardy Clause.

*Witte* is dispositive of Musone's argument. Although, under the grouping rules, Musone's sentence for mail fraud was higher than it otherwise would have been because he, also, committed arson, his sentence for mail fraud did not constitute "punishment" for arson within the meaning of the Double Jeopardy Clause. Indeed, but for the grouping rules, Musone might have received consecutive sentences for arson and mail fraud that would have exceeded the sentence actually imposed.

Since there was no double jeopardy violation, Musone's claim that his counsel was ineffective in not challenging what Musone contends were multiple punishments for the same offense also fails.

### Conclusion

For all of the foregoing reasons, Musone's § 2255 motion is denied and his petition is dismissed.

IT IS SO ORDERED.