# United States Court of Appeals
## For the First Circuit

No. 02-2516

UNITED STATES OF AMERICA,

Appellee,

v.

UMESH PATEL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Lynch, Circuit Judge,
Cyr, Senior Circuit Judge,
and Howard, Circuit Judge.

Douglas S. Brooks, with whom Thomas M. Hoopes and Kelly, Libby & Hoopes, P.C. were on brief, for appellant.
William C. Brown, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

May 27, 2004

**HOWARD**, <u>Circuit Judge</u>. On January 17, 2001, Umesh Patel was indicted for setting fire to his business and then attempting to collect insurance proceeds for the resulting damage. On May 17, 2002, following a fourteen-day jury trial, Patel was convicted on one count of arson, <u>see</u> 18 U.S.C. § 844(i), two counts of mail fraud, <u>see</u> 18 U.S.C. § 1341, and one count of using fire to commit mail fraud, <u>see</u> 18 U.S.C. § 844(h)(1). Patel was sentenced to 204 months of imprisonment: 84 months to run concurrently for arson and mail fraud and 120 months to run consecutively for using fire to commit mail fraud.[1] On appeal, Patel argues that there was insufficient evidence of arson and that his sentence violated the Double Jeopardy Clause of the Fifth Amendment. We affirm.

**SUFFICIENCY OF THE EVIDENCE**

Patel claims that there was insufficient evidence that he committed arson. <u>See</u> Fed. R. Crim. P. 29. In evaluating this claim:

> [W]e must determine whether the evidence, taken in the light most favorable to the government--a perspective that requires us to draw every reasonable inference and to resolve credibility conflicts in a manner consistent with the verdict--would permit a rational trier of fact to find each element of the crime[] charged beyond a reasonable doubt. The government can meet this burden by either direct or circumstantial evidence, or by any combination of the two. Moreover, the

---

[1] Patel was also sentenced to 5 years of supervised release and ordered to pay restitution and a special assessment.

-2-

> government need not disprove every hypothesis consistent with the defendant's innocence; rather, it is enough that a rational jury could look objectively at the proof and supportably conclude beyond a reasonable doubt that the defendant's guilt has been established.

United States v. Santana, 175 F.3d 57, 62 (1st Cir. 1999)(internal quotations and citations omitted).

Arson requires proof that the defendant (1) maliciously damaged or destroyed (2) by fire or an explosive (3) a building used in interstate commerce. See 18 U.S.C. § 844(i); United States v. Ruiz, 105 F.3d 1492, 1499 (1st Cir. 1997). The government sought to prove that, on February 7, 2000, Patel committed arson by setting fire to the Crossing Corner Market, a convenience store that Patel owned and operated in Beverly, Massachusetts. Patel argues that he is entitled to a judgment of acquittal because the evidence was insufficient to establish (1) that the fire was set intentionally and (2) that he was the one who set the fire.

The government introduced ample evidence that the fire was set intentionally. Two "fire cause" investigators testified that the fire had been purposely set at two separate locations in the store. Wayne Miller, a "fire and explosion analyst," testified that, based on his investigation, the fires began on the main floor of the store near the beverage coolers and in the basement under the electrical panels. He further testified that "the fire was intentionally set using an open flame and readily combustible

-3-

material."  Similarly, Michael Hennessy, a fire investigator certified by the International Association of Arson Investigators and National Association of Fire Investigators, concluded, based on his own investigation, that the fire was "incendiary" in nature and had two independent points of origin on the first floor and in the basement.  He further concluded that the fire was started "by a human act and an open flame."

To support Miller's and Hennessy's conclusions, the government presented other testimony confirming that the fire pattern indicated that separate fires had been set at two locations in the store.  In addition to evidence affirmatively demonstrating an intentionally lit fire, the government presented testimony ruling out other possible accidental causes for the fire, including a malfunction in the electrical and mechanical components present in the building.

Patel claims that the jury was not entitled to believe this testimony because the Beverly Fire Department investigator, Louis Bennett, the first investigator to inspect the scene, testified that the fire was caused by a malfunction in the compressor that operated beneath the cooler on the first floor. As indicated above, other witnesses offered contrary testimony. Where the jury hears conflicting testimony, it decides which version to credit.  See United States v. O'Brien, 14 F.3d 703, 707 (1st Cir. 1994) ("[A] jury can freely choose to credit particular testimony

while discounting other testimony that arguably points in a different direction."). There were several reasons that the jury could have decided not to credit Bennett's testimony. First, Bennett testified that his conclusions were only "preliminary." Second, he admitted that he did not fully inspect the compressor. Third, there was other testimony that he did not do "a thorough job" investigating the scene. Fourth, he stated that subsequent information showing that the compressor may not have been the cause of the fire opened an "avenue beyond [his] level of expertise." Finally, at one point during the investigation, he changed his opinion from the "possibility of an accidental [fire] to the possibility of an incendiary suspicion."[2] In short, while reasonable people perhaps could have credited Bennett's testimony, we do not sit "as a thirteenth juror who may set aside a verdict because we [may] have reached a different result." Ruiz, 105 F.3d at 1502 (internal quotations and citation omitted).

Patel next argues that, even if someone intentionally set the fire, there was inadequate proof that it was he. The

---

[2] Patel suggests that the jury was compelled to believe Bennett's opinion because his investigation occurred before the investigations by Miller and Hennessy. The government, however, presented testimony that this time lapse did not affect the accuracy of the later investigations because the critical evidence (fire and heat patterns) was not affected by the delay. The jury was free to consider this testimony in deciding whose testimony to credit.

government presented evidence that, even though Patel did not own the building in which his store was located, he carried a $75,000 insurance policy on the store's contents. The government also showed that Patel was in dire financial straits on the date of the fire. In the years prior to the fire, sales at his store had decreased, and he was relying, to a large degree, on revenues generated by lottery sales. In 1999, the year before the fire, lottery sales accounted for 40% of the store's net income. Just prior to the fire, the Massachusetts Lottery Commission had revoked Patel's lottery license because of his repeated failure to pay the Commission. A week before the fire, the Commission deactivated Patel's lottery machines and sent a representative to Patel's store to retrieve the instant game scratch tickets. On the date of the fire, Patel owed the Commission over $40,000.

Besides lottery debt, Patel was suffering other financial problems. For example, Patel had failed to pay a supplier a $5,500 debt, and this debt had been referred to an attorney for collection. There was also evidence that Patel had bounced checks to several other vendors. The month before the fire, Patel had written over $10,000 in checks for which there were insufficient funds.

In addition to Patel's financial difficulties, the government presented evidence that, when the fire began, Patel was alone in the store. Further, in the days before the fire, Patel

told several people that he thought that the circuit breakers in his store were a fire hazard. However, after the fire, he denied making such statements.

Patel contends that this evidence was insufficient to convict him of arson because there was no evidence establishing a direct link between him and the fire. It is true that the evidence inculpating Patel was largely circumstantial. Circumstantial evidence "asserts something else from which the trier of fact may either (i) reasonably infer the truth of the proposition or (ii) at least reasonably infer an increase in the probability that the proposition is in fact true." Ruiz, 105 F.3d at 1500 (internal quotations and citations omitted). A guilty verdict may be based entirely on circumstantial evidence. See United States v. Scharon, 187 F.3d 17, 21 (1st Cir. 1999); United States v. Andujar, 49 F.3d 16, 20 (1st Cir. 1995); United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. 1991).

Here, the circumstantial evidence was sufficient for the jury to conclude that Patel set the fire. As discussed above, there was ample evidence that the fire was set intentionally. Further, the evidence showed that (1) Patel was alone at the time of the fire, giving him an opportunity to commit the crime, and (2) he had substantial financial troubles, providing him with a motive. In addition, Patel's pre-fire warnings that there might be an electrical fire in his store could have been interpreted as an

attempt to cover-up the crime by offering a false explanation for the fire.  Taken together, this evidence could lead a reasonable jury to conclude that Patel had set the fire.[3]

Recently, the Eighth Circuit rejected a similar sufficiency challenge.  In United States v. Schnapp, 322 F.3d 564, 566 (8th Cir. 2003), the defendant's parents owned a convenience store that the defendant managed.  The store, which was covered by fire insurance, was suffering financial difficulties.  See id. at 567-68.  The defendant was alone in the store just before the fire began and there was evidence that the fire was set intentionally.  See id. at 566-67.  The court concluded that these facts supported the conviction because the evidence showed that someone had committed arson and that the defendant had "the opportunity and means to commit the crime."  Id. at 573.

The Seventh Circuit reached a similar conclusion in United States v. Lundy, 809 F.2d 392 (7th Cir. 1987).  In Lundy, the defendant also owned a convenience store, covered by fire insurance, that was suffering financially.  See id. at 393-94.  Prior to the fire, the defendant moved several empty boxes to the

---

[3] Patel argues that he should have been found not guilty because he presented evidence that an unknown intruder started the fire after entering the store through a hole in the basement wall. Putting aside the conflicting evidence on whether this hole existed on the date of the fire and whether it provided access to the outside of the building, the evidence "need not exclude every hypothesis of innocence" to sustain a conviction. United States v. Scantleberry-Frank, 158 F.3d 612, 616 (1st Cir. 1998) (quoting Batista-Polanco, 927 F.2d at 17).

rear of the store, a practice that the defendant previously had called a fire hazard. See id. at 394. On the date of the fire, the defendant was alone in the store for a half hour before the fire was reported. See id. Investigators later concluded that the fire "was incendiary in nature." Id. The court determined that there was sufficient evidence to uphold the arson conviction because the government presented evidence "of [the defendant's] motive to set the fire, his plan . . . , his opportunity to carry out the plan, and evidence that [the store] did not burn accidentally." Id. at 396. Similar to Schnapp and Lundy, the government presented evidence of Patel's motive and opportunity, that he attempted a cover-up, and that the fire was set intentionally. This evidence is sufficient to sustain Patel's conviction.

## DOUBLE JEOPARDY

Patel contends that his sentence for violating 18 U.S.C. § 844(i) (arson), 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 844(h)(1) (using fire to commit a felony) must be vacated because it contains multiple punishments for the same offense in violation of the Double Jeopardy Clause, U.S. Const. amend. V. Patel claims that his sentence is unlawful because "once the jury found him guilty of arson and mail fraud all of the elements of the use of fire count were met." This argument was not raised below and therefore will be considered only for plain error. See United

-9-

States v. LiCausi, 167 F.3d 36, 46 (1st Cir. 1999) (citing United States v. Kayne, 90 F.3d 7, 10 (1st Cir. 1996)).

As relevant here, the Double Jeopardy Clause protects against multiple punishments for the same offense. See United States v. Rivera Martinez, 931 F.2d 148, 152 (1st Cir. 1991). The Clause, however, "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 365 (1983). The limited effect of the Double Jeopardy Clause on multiple punishment claims derives from "the principle that the power to define criminal offenses and prescribe punishments . . . belongs solely to the legislature." United States v. Handford, 39 F.3d 731, 735 (7th Cir. 1994). As a result, if the legislature decides to impose multiple punishments for the same offense, it may do so. See Garrett v. United States, 471 U.S. 773, 779 (1985). Thus, determining the permissibility of imposing multiple punishments for one course of conduct is a matter of discerning the legislature's intent. See Albernaz v. United States, 450 U.S. 333, 344 (1981).

Often, however, this intent will not be apparent. In such cases, the Blockburger test is employed to determine whether the legislature intended to authorize multiple punishments. See United States v. Blockburger, 284 U.S. 299 (1932); Catala Fonfrias v. United States, 951 F.2d 423, 425-26 (1st Cir. 1991). Under Blockburger, "where the same act or transaction constitutes a

-10-

violation of two (or more) distinct statutory provisions, the test to be applied to determine whether there are two (or more) offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger, 284 U.S. at 304. It must be emphasized, however, that for multiple punishment claims, Blockburger merely provides a default rule of statutory construction and should be employed only in the absence of a clear indication of legislative intent. See Rivera Martinez, 931 F.2d at 154-55 (citing Hunter, 459 U.S. at 367).

Patel relies exclusively on Blockburger in framing his argument. Were we to reflexively apply Blockburger to this case, Patel's claim might well have some merit. Mail fraud and using fire to commit mail fraud appear to fail Blockburger's separate offense test because every element of mail fraud is an element of using fire to commit mail fraud. See Whalen v. United States, 445 U.S. 684, 693-94 (1980) (holding that rape and a "killing committed in the course of a rape" are the same offense under Blockburger because the killing charge requires proof of all the elements of the rape charge and therefore, in the absence of a contrary legislative intent, separate punishments are impermissible). However, Patel has entirely ignored the threshold question for reaching the Blockburger analysis in the first place, namely, what was Congress' intent in enacting the using fire statute. This is where his argument falters.

-11-

Congress intended the using fire statute to enhance the penalty for those who use fire while committing another federal felony and to authorize multiple punishments in such cases. The statute reads:

> Whoever . . . uses fire . . . to commit any felony which may be prosecuted in a court of the United States . . . shall, <u>in addition to the punishment provided for such felony</u>, be sentenced to imprisonment for 10 years . . . [T]he term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment.

18 U.S.C. § 844(h)(1) (emphasis supplied). The statute plainly provides that a defendant who uses fire in the commission of a federal felony will be punished cumulatively for the predicate felony <u>and</u> for using fire to commit that felony. If further support were needed, the legislative history reinforces this intent. The legislative record states that the proposed law makes it an "additional offense" to use fire in connection with a felony and provides for "a sentence in addition to the sentence for the predicate offense." H.R. Rep. No. 678, 97th Cong., 2d Sess., <u>reprinted in</u> 1982 U.S.S.C.A.N. 2631, 2633 (legislative history to the Anti-Arson Act of 1982, Pub. L. 97-298).[4] As the statute's text and legislative history express, Congress meant to punish

---

[4] The legislative history also indicates that Congress specifically intended to punish those who use fire to commit insurance fraud. <u>See</u> <u>id.</u> at 2632 ("Fire is used extensively not only for the criminal purposes of extortion, terrorism and revenge, but to conceal other crimes such as homicide and for fraud against insurance companies.").

using fire to commit a felony and the predicate felony cumulatively.[5]  See Blacharski v. United States, 215 F.3d 792, 794-95 (7th Cir. 2000); United States v. Stewart, 65 F.3d 918, 928 (11th Cir. 1995); United States v. Shriver, 838 F.2d 980, 982 (8th Cir. 1988).

Because Congress explicitly authorized cumulative punishments for the predicate felony and using fire to commit the predicate felony, there was no Double Jeopardy violation in sentencing Patel for both mail fraud and using fire to commit mail fraud, even though these constitute the "same offense" under Blockburger.  See Shriver, 838 F.2d at 982; Musone v. United States, 113 F. Supp. 2d 255, 261 (D.R.I. 2000), aff'd, No. 00-2482, 2001 WL 1388915 (1st Cir. Oct. 3, 2001). Patel claims that he is nevertheless entitled to relief because he was also convicted of arson.

Neither the text nor the legislative history of the using fire statute reveals whether Congress intended it to apply where the defendant is also charged with arson.  However, there is no Double Jeopardy bar to imposing multiple punishments for arson and

---

[5] There is, however, an important exception.  See infra at 15-16.  Arson cannot be charged as the predicate felony because arson and "using fire to commit arson" is a redundancy for which Congress did not intend to authorize cumulative punishments.  See United States v. Chaney, 559 F.2d 1094, 1096 (7th Cir. 1977) (holding that arson cannot be the predicate felony for purposes of the using fire statute because arson always requires the use of fire and Congress did not intend the using fire statute to increase the penalty for every arson committed).

-13-

using fire to commit mail fraud because these are separate offenses under <u>Blockburger</u>.  Arson requires proof that a defendant, through the use of fire, damaged "a building . . . used in interstate commerce."  18 U.S.C. § 844(i).  Using fire to commit mail fraud requires proof that the defendant used the mails to further a scheme to defraud.  <u>See</u> 18 U.S.C. § 1341.  Thus, arson requires proof that <u>fire damaged a building</u>, which is not an element of using fire to commit mail fraud.  And using fire to commit mail fraud requires proof that the defendant <u>used the mails to further a scheme to defraud</u>, which is not an element of arson.  Therefore, the addition of the arson conviction does not make Patel's resulting sentence an impermissible cumulative punishment because his punishments were imposed for different offenses.[6]  <u>See</u> <u>United States</u> v. <u>Smith</u>, 354 F.3d 390, 399 (5th Cir. 2003), <u>cert. denied</u>, 2004 WL 316514 (U.S. Mar. 22, 2004); <u>United States</u> v. <u>Gardner</u>, 211 F.3d 1049, 1056-57 (7th Cir. 2000); <u>United States</u> v. <u>Zendeli</u>, 180 F.3d 879, 886 (7th Cir. 1997); <u>United States</u> v. <u>Nguyen</u>, 28 F.3d 477, 485 (5th Cir. 1994); <u>United States</u> v. <u>Karlic</u>, 997 F.2d 564, 571 (9th Cir. 1993); <u>United States</u> v. <u>Fiore</u>, 821 F.2d 127, 130-31 (2d Cir. 1987).

---

[6] For similar reasons arson is not the same offense as mail fraud; arson requires the setting of a fire, while mail fraud requires the use of the mails to defraud.  Therefore, cumulative punishments for arson and mail fraud are also permissible.

-14-

In support of his claim, Patel relies on United States v. Corona, 108 F.3d 565, 573-75 (5th Cir. 1997). Corona, however, is distinguishable. In Corona, the defendants were convicted of arson, conspiracy to commit arson, and using fire to commit conspiracy to commit arson. See id. at 571. The overt act for the conspiracy was setting the fire underlying the arson count. See id. at 573. The court held that, consistent with Double Jeopardy principles, cumulative punishments could not be imposed because the essence of each of the three counts was the same, i.e. arson. See id. For support, the court relied on Chaney, which had held that arson could not be the predicate felony for a conviction under the using fire statute because arson and "using fire to commit arson" are the "same offense" (every arson requires the use of fire), and Congress did not intend the using fire statute to enhance the punishment for all arsons. See id. at 573; supra at n.5. The Corona court determined that, where the act furthering the arson conspiracy is setting the fire underlying the arson, charging conspiracy as the predicate felony is just another way of charging arson as the predicate felony.[7] See id. The court declined to

---

[7] The Corona court recognized that, if the overt act furthering the conspiracy to commit arson was not the setting of the fire underlying the arson charge, it could be possible for arson conspiracy to serve as the predicate felony for the using fire statute. See id. at 573-74. By way of example, the court suggested that if the defendants had set a fire to communicate via smoke signal about the arson conspiracy, the Double Jeopardy problem could be obviated. See id.

-15-

countenance this prosecutorial "sleight of hand" to avoid the rule that a using fire conviction cannot be predicated on arson as the underlying felony.  Id.

Here, the predicate felony for the using fire offense is mail fraud, not arson (as in Chaney) or conspiracy to commit arson (as in Corona).  The purpose of the using fire statute is to enhance penalties for crimes that do not require but may involve the use of fire.  That is exactly the situation here.  Mail fraud is a felony that is typically completed without using fire; however, Congress has determined that, where the defendant uses fire to commit mail fraud, the defendant has committed a more serious offense.  Thus, unlike Corona, in which the government, through "creative pleading" and contrary to congressional intent, sought to employ the using fire statute to enhance the punishment for arson, 108 F.3d at 574, the government charged Patel with violating the using fire statute in the way that Congress intended --to provide additional punishment for using fire in the commission of a felony in which the use of fire is not an element of the offense.  See Smith, 354 F.3d at 399-400 (distinguishing Corona on a similar basis).

Despite the dispositive differences between Corona and this case, Patel seizes on the Corona court's statement that "where there are more than two statutory provisions at issue, each offense must contain an element not contained in the sum of the elements of

the other offenses" 108 F.3d at 572, to make an interesting and novel argument that the using fire conviction is duplicative. In essence, he claims that combining the elements of mail fraud and arson satisfies all of the elements of the using fire offense.

Even if this mode of <u>Blockburger</u> analysis were appropriate in this case, it likely would not assist Patel because the using fire offense required the government to prove an additional element not encompassed by combining the elements of arson and mail fraud. Arson required proof that Patel set fire to a building; mail fraud required proof that Patel used the mails to further a scheme to defraud; and using fire to commit a felony required proof that Patel used fire to commit mail fraud. Thus, to gain the use of fire conviction the government had to convince the jury of an additional element not required for either arson or mail fraud: Patel committed arson <u>in order to</u> commit the mail fraud. In other words, using fire to commit mail fraud required the government to connect the arson to the mail fraud. The statutory elements of arson and mail fraud can be met in a single prosecution without the government connecting the two crimes. Therefore, using fire to commit mail fraud has an additional element which makes it a separate offense from the combination of arson and mail fraud.[8]

---

[8] We have noted earlier that a conviction for arson requires proof of an element not required for a use of fire conviction. <u>See</u> <u>supra</u> at 14.

Patel's argument has some surface appeal because the government's case against him arose from one course of conduct and therefore the facts presented to convict Patel of arson and mail fraud were the same facts presented to establish the using fire violation. However, we generally do not conduct a Blockburger analysis by considering the facts of the case at hand. See United States v. Lanoue, 137 F.3d 656, 662 (1st Cir. 1998) (citing United States v. Dixon, 509 U.S. 668, 712 (1993)). As the Corona court stated, "[d]etermining whether statutory offenses are separate for double jeopardy purposes involves parsing the statutes apart from the facts of any particular case." 108 F.3d at 572. Because the using fire statute requires proof of an element in addition to those required to prove arson and mail fraud (i.e., the arson fire was set by the defendant to commit the mail fraud), Patel's argument arguably fails.

In any event, we need not conclusively resolve these legal issues at this juncture since Patel did not raise them in the district court. Whatever merit Patel's "combination" argument may have, the emergent law concerning "combination" double jeopardy claims was neither "clear" nor "obvious" and therefore Patel cannot establish plain error. See United States v. Marino, 277 F.3d 11, 32 (1st Cir. 2002). Accordingly, the sentence that the district court imposed does not constitute reversible error.

## CONCLUSION

For the reasons set forth above, we **<u>affirm</u>** the conviction and sentence.

_____

**Concurring opinion follows.**

**LYNCH, Circuit Judge** **(concurring in part and concurring in the judgment).** I join the analysis of the majority in rejecting Patel's claim that the evidence was insufficient to convict. As to the double jeopardy claim, I join in the judgment. Because this claim was not raised below, our review is only for plain error.

Patel must concede that if the mail fraud conviction is compared one-on-one with the 18 U.S.C. § 844(h)(1) (using fire to commit a felony) conviction, then there is no double jeopardy issue because Congress intended an enhanced sentence. He also must concede that if his arson conviction alone is compared one-on-one with the § 844(h)(1) conviction, then there is no double jeopardy problem because the elements are different. However, Patel's claim raises an interesting issue not addressed directly by this court or the United States Supreme Court. His argument is that when the elements of the arson conviction and the elements of the mail fraud conviction are combined together and then compared with the elements of the § 844(h)(1) conviction, the Blockburger test is not met. Cf. Blockburger v. United States, 284 U.S. 299, 304 (1932).

For each of the arson and mail fraud convictions Patel received concurrent 84 month (seven year) sentences with mandatory special assessments. It was the conviction for using fire to commit a felony under § 844(h)(1) that added another ten years to the sentence. Necessarily then, there is a second prong to Patel's argument: that the Double Jeopardy Clause having been violated,

-20-

the case should be remanded to the district court where, he argues, it is the court, and not the prosecutor, which should have the choice as to which of the duplicative convictions to vacate. Because the district court judge considered this case an extreme example of overcharging by the government that produced a sentence that was inherently unfair and excessive, it is fairly clear that the district court would choose to vacate the § 844(h)(1) conviction.

On the threshold question -- whether there is any double jeopardy violation -- we first ask whether there are indications that Congress intended, via § 844(h)(1), to add a ten-year sentence where someone has been convicted of arson and convicted of a different felony that forms the underlying basis for the § 844(h)(1) conviction. See Missouri v. Hunter, 459 U.S. 359, 368-69 (1983). As the majority notes, there is no legislative history on this point, and one cannot say with certainty that Congress did or did not intend to add a ten-year sentence in these combination circumstances.

We then revert to the Blockburger test. That test is usually applied to only two offenses, to compare the elements of the one with the elements of the other. Here, Patel asks us to engage in a Blockburger comparison of three offenses. I see no reason in theory why his proposed test -- that each offense must contain an element not contained in the sum of the elements of the

-21-

other offenses -- should not apply.  See United States v. Corona, 108 F.3d 565, 572 (5th Cir. 1997); see also United States v. Davis, 793 F.2d 246, 248 (10th Cir. 1986).  Corona is the only case involving a Blockburger comparison of a combination of elements, from offense A and offense B, with the elements of an offense C that uses offense B as its underlying felony predicate.  As the majority correctly points out, Corona is distinguishable based on the different crimes charged in that case.  But the "combination" claim raised by Patel is not obviously without merit.

The intuitive appeal of Patel's claim lies in the fact that the same "fire" was used to prove both the arson offense and the § 844(h)(1) offense.  If the fire used to prove the arson had been different from the fire used to perpetrate the underlying felony in the § 844(h)(1) conviction, then the situation would be different.  The majority reasons that, even assuming that under Blockburger each offense must contain an element not contained in the sum of the elements of the other two offenses, Patel's argument still most likely fails because the § 844(h)(1) offense does require proof of an additional element not contained in the sum of the elements of arson and mail fraud: namely, that Patel used fire in order to commit the mail fraud.  That response to Patel's combination claim is entirely sensible.

But it may not comport with the way in which we are supposed to separate out the elements of an offense for Blockburger

-22-

purposes.  We do not have direct guidance from the Supreme Court on how to approach this type of combination claim.  The government did have to connect the use of fire in the arson to the mail fraud in order to gain a conviction under § 844(h)(1).  But common sense suggests that once the government proved the elements of the arson charge (using fire to burn down a building) and the elements of the mail fraud charge (which in this case involved an insurance fraud scheme tied to the very fire in the very building involved in the arson charge), the connection between the two charges was already made and thus all of the elements of the § 844(h)(1) offense were already proven.[9]

In Corona, Judge Higginbotham noted that, in a combination case where an offense B is also the felony underlying the § 844(h)(1) offense, the overlay of § 844(i) and § 844(h)(1) could well result in a double jeopardy violation if it were impossible for the § 844(h)(1) underlying felony (offense B) to be accomplished by a different "fire" from the "fire" used to accomplish the arson.  But because, hypothetically, two different fires could be involved, the Corona court concluded that the elements of § 844(i) and § 844(h)(1) were not necessarily the same. Under one approach to Blockburger, the analysis would end there:

---

[9] Although the arson statute, 18 U.S.C. § 844(i), does not literally employ the phrase "uses fire," it does employ the phrase "by means of fire."  And this court has determined that the term "uses" fire in § 844(h)(1) is the equivalent of "by means of" fire. United States v. Ruiz, 105 F.3d 1492, 1503-04 (1st Cir. 1997).

because two different fires <u>could</u> be involved in the § 844(i) and § 844(h)(1) offenses, the fact that the same fire <u>is</u> involved in both offenses in a particular case would be irrelevant. <u>Corona</u> declined to follow such a technical approach to analyzing the elements of offenses under <u>Blockburger</u>, citing to the rule that "[t]here may be instances in which Congress has not intended cumulative punishments . . . , notwithstanding the fact that each offense requires proof of an element that the other does not." <u>Corona</u>, 108 F.3d at 574 (quoting <u>Whalen</u> v. <u>United States</u>, 445 U.S. 684, 693 n.7 (1980)). Instead, the <u>Corona</u> court held that double jeopardy was violated because there was no evidence that the defendants had actually used a different fire to carry out the § 844(h)(1) underlying felony from the fire used to perpetrate the arson.

The majority opinion suggests that sort of fact-based consideration of the offenses in a <u>Blockburger</u> analysis is inappropriate. This court has said that under <u>Blockburger</u> one looks to the elements of each offense rather than to the evidence used to prove each element. <u>United States</u> v. <u>Lanoue</u>, 137 F.3d 656, 661 (1st Cir. 1998). But even that rule does not preclude, in some instances, looking at the facts underlying the convictions. After all, it is also our rule that if a conspiracy offense is "actually used to establish the 'continuing series of violations' and 'in concert' requirements needed to show an enterprise under 21 U.S.C.

§ 848," then double jeopardy bars the § 848 punishment. <u>Stratton</u> v. <u>United States</u>, 862 F.2d 7, 9 (1st Cir. 1988) (per curiam). Further, when a statute references several other offenses, as § 844(h)(1) does, with a term as broad as "felony" (and thus does not set forth language combining the new elements with those of the specific underlying offenses), there may be some role for the facts in determining whether there is a <u>Blockburger</u> violation. <u>Cf.</u> <u>Whalen</u>, 445 U.S. at 708-12 (Rehnquist, J., dissenting) (suggesting that the <u>Blockburger</u> test may be misdirected when applied to statutes defining compound and predicate offenses). The law in this area is not marked by clarity.

The majority's reasoning may be correct, but I am uncomfortable endorsing it with any certainty. Nevertheless, one thing that is certain is that there was no "plain" error here.

Going beyond that, even if Patel were correct on his first argument, it is not at all clear that it would do Patel much good. As to the second of his arguments, under the case law, the choice of which of two convictions to vacate where those convictions carry non-concurrent sentences appears to belong to the government, not the district court. <u>See</u> <u>United States</u> v. <u>Walters</u>, 351 F.3d 159, 173 (5th Cir. 2003); <u>Corona</u>, 108 F.3d at 574-75; <u>United States</u> v. <u>Graham</u>, 60 F.3d 463, 469 (8th Cir. 1995). Although there is some law from other circuits which leaves the choice of which conviction to vacate to the district court where

two convictions resulted in concurrent sentences, see, e.g., United States v. Hebeka, 25 F.3d 287, 291 (6th Cir. 1994); United States v. Thomas, 810 F.2d 478, 479-80 (5th Cir. 1987), that situation is obviously different.  It is not impossible, if given the choice, that the government might revisit its charging decision in this case, which has led to a seventeen-year sentence for a first-time offender who is the father of three young children.  But thus far, the government has withstood the district judge's entreaties that it reconsider and has not given any indication it will change its view.  If the choice belongs to the prosecutor, even if Patel were to prevail on his first argument, that victory would most likely be pyrrhic.