Hillsborough-northern judicial district
No. 2003-670

THE STATE OF NEW HAMPSHIRE

v.

LUCILLE SANCHEZ

Argued: July 13, 2005
Opinion Issued: September 29, 2005

*Kelly A. Ayotte*, attorney general (*David W. Ruoff*, assistant attorney general, on the brief and orally), for the State.

*Kenna, Johnston & Sharkey, P.A.*, of Manchester (*Bruce E. Kenna* on the brief and orally), for the defendant.

NADEAU, J. Following a jury trial in Superior Court (*Lynn*, J.), the defendant, Lucille Sanchez, was convicted of first degree murder, RSA 630:1-a (1996); RSA 626:8 (1996), and conspiracy to commit murder, RSA 629:3 (1996); RSA 630:1-a. We affirm.

The jury could have found the following facts. On July 2, 1989, Lucienne Lemaire, the defendant's aunt, was found strangled in her Manchester home. The police investigation determined that she had been murdered sometime during the evening of July 1, 1989. During the course of several

interviews by police investigators on July 2, 4 and 11, 1989, the defendant denied any involvement in her aunt's murder and initially denied any knowledge of who might have committed the murder. After several hours of questioning on July 11, however, the defendant told investigators that her boyfriend, later identified as Baltazar Salas-Robles, an illegal alien, had admitted to her on July 1 that he had committed the murder. The defendant told investigators that she withheld the information because Salas-Robles had threatened her family and told her that he would implicate her if she told police. By this time, Salas-Robles had fled.

In 2002, police investigators arrested Salas-Robles in Texas. After extensive questioning, Salas-Robles admitted murdering the victim and told investigators that the defendant had solicited him to kill her aunt so she could claim her inheritance. The defendant was arrested at her home in Texas in March 2002. Following her return to New Hampshire, she was indicted on three charges: (1) first degree murder; (2) conspiracy to commit murder; and (3) solicitation to commit murder. Prior to his trial, Salas-Robles reached a plea agreement with the State and agreed to testify against the defendant.

Following a jury trial, the defendant was convicted on all three charges. At sentencing, the trial court granted the defendant's motion to dismiss the solicitation charge as a violation of her double jeopardy rights. However, the trial court denied the defendant's motion to dismiss the conspiracy charge. The trial court imposed a sentence of life imprisonment without the possibility of parole on the first-degree murder charge and a concurrent sentence of fifteen to thirty years on the conspiracy charge.

On appeal, the defendant argues that the trial court: (1) erred in failing to give the jury a curative instruction after the State's closing argument; (2) erred in failing to instruct the jury on the legal principle of jury nullification; and (3) violated her double jeopardy rights by sentencing her on convictions for the separate crimes of first degree murder and conspiracy to commit first degree murder.

The defendant first contends that the trial court should have given a curative instruction after the State misstated the evidence. Specifically, during the State's closing argument, the prosecutor commented that the night of July 1, 1989, was the perfect opportunity to murder the victim because her upstairs tenants were not home.

The defendant argues that there was "no evidentiary basis" to support the State's argument. Following the jury instructions, the defendant objected and asked the court to instruct the jury "not to consider any comment by counsel regarding evidence that may not be consistent with their recollection what [sic] the evidence was." The defendant argues that

the trial court unsustainably exercised its discretion by denying the requested jury instruction. We disagree.

As the trial court is in the best position to gauge any prejudicial effect the prosecutor's closing remarks may have had on the jury, we review its decision declining to give an instruction under an unsustainable exercise of discretion standard. *State v. DeCosta*, 146 N.H. 405, 415 (2001); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). To show that the trial court's decision is not sustainable, the defendant must demonstrate that it was clearly untenable or unreasonable to the prejudice of his case. *Lambert*, 147 N.H. at 296.

The State may not ask the jury to base its decision upon evidence not in the record. *State v. Glodgett*, 148 N.H. 577, 582 (2002) (quotation and brackets omitted). However, "a prosecutor may draw reasonable inferences from the facts proven and has great latitude in closing argument to both summarize and discuss the evidence presented to the jury and to urge them to draw inferences of guilt from the evidence." *Id.* (quotation and brackets omitted).

Here, the prosecutor's remark concerning the absence of the victim's upstairs tenants on the night of the murder did not constitute an improper comment. The record reflects that the comment was based upon reasonable inferences from the facts elicited during the trial. The victim and her upstairs tenants shared a common entrance into the house. Witnesses testified that they tried knocking on all of the outside doors and windows in order to find a way into the home and that the victim's daily newspaper was still tucked in the outside door. All of the entrance doors were locked and one of the first officers to arrive at the crime scene had to climb up a ladder to gain access into the home. In addition, witnesses testified that they had not seen the upstairs tenants that morning and police testified they were not home when they were canvassing the crime scene. Finally, in a July 4, 1989, interview that was admitted into evidence, the defendant alluded to the fact that the upstairs tenants were gone for the weekend. Given the evidence presented at trial, the State drew a reasonable inference that the victim's upstairs tenants were not home on the night of the murder. Because the State neither misstated the evidence nor invited the jury to speculate about facts not in the record, we agree with the trial court that no curative instruction was required.

The defendant next argues that the trial court unsustainably exercised its discretion by refusing to instruct the jury on the legal principle of jury nullification. The defendant bases this argument upon the plea bargain in

which Salas-Robles, the admitted murderer of the victim, was charged with a lesser offense in exchange for his testimony implicating the defendant. At the close of the trial, the defendant submitted a request for the following specific jury instruction: "Even if you find that the State has proven each and every element of the offense charged beyond a reasonable doubt, you may still find the defendant not guilty if you have a conscientious feeling that a not guilty verdict would be a fair result in this case." We disagree that the jury should have been given a jury nullification instruction.

■ The trial court's refusal to give a specific jury instruction on the principle of jury nullification will not be reversed unless it was an unsustainable exercise of discretion. *State v. Hokanson,* 140 N.H. 719, 721 (1996); *cf. State v. Lambert,* 147 N.H. at 296 (explaining unsustainable exercise of discretion standard). To show that the trial court's decision is not sustainable, the defendant must demonstrate that it was clearly untenable or unreasonable to the prejudice of his case. *Lambert,* 147 N.H. at 296.

■ Jury nullification is the undisputed power of the jury to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence. *Hokanson,* 140 N.H. at 721. The trial court ordinarily gives the *Wentworth* instruction, *see State v. Wentworth,* 118 N.H. 832, 838-39 (1978), which provides the equivalent of a jury nullification instruction. The decision to give a more specific instruction on nullification lies within the sound discretion of the trial court. *Hokanson,* 140 N.H. at 721. It is well established that jury nullification is neither a right of the defendant, nor a defense recognized by law. *Id.*

■ Here, the trial court gave the standard *Wentworth* instruction, instructing the jury that it *should* find the defendant guilty of first-degree murder if the State had met its burden. *Wentworth,* 118 N.H. at 838-39. We have held that, "the effect of 'should' in the charge provide[s] the equivalent of a jury nullification instruction that even if the jurors found that the State proved beyond a reasonable doubt all the elements of the offense charged, they could still acquit the defendant." *State v. Brown,* 132 N.H. 520, 527 (1989) (quotation and brackets omitted). The defendant has not demonstrated that anything in this case warranted a more specific nullification instruction. Accordingly, we find that the trial court's decision not to give the jury nullification instruction requested was a sustainable exercise of discretion.

Finally, the defendant argues that the conspiracy conviction and sentence violated her double jeopardy rights under Part I, Article 16 of the

New Hampshire Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. Specifically, she argues that the "Conspiracy charge and the First Degree Murder Charge, *as charged,* shows [*sic*] that proof of the two charges requires identical evidence." We disagree.

We first examine the defendant's claim under the New Hampshire Constitution. *State v. Ball,* 124 N.H. 226, 231 (1983).

> The double jeopardy clause of the New Hampshire Constitution protects a defendant from multiple punishments for the same offense. Two offenses will be considered the same unless each requires proof of an element that the other does not. Thus, multiple indictments are permissible only if proof of the elements of the crimes *as charged* will in actuality require a difference in evidence. The ultimate question is whether the facts charged in the second indictment, would, if true, have sustained the first. As these formulations of the relevant inquiry make clear, we review and compare the statutory elements of the charged offenses in light of the actual allegations contained in the indictments.

*State v. MacLeod,* 141 N.H. 427, 429 (1996) (citations, quotations and brackets omitted).

When reviewing two separate indictments, "[i]t does not matter how overlapping, reciprocal, or similar the evidence used to sustain the indictments was if a difference in evidence is actually required to prove the crime charged." *State v. Hull,* 149 N.H. 706, 717 (2003); *see State v. McKean,* 147 N.H. 198, 201-02 (2001) (no double jeopardy violation where defendant was convicted of kidnapping and criminal threatening in the same transaction despite similar elements and factual allegations in the charging documents). For the same reason, it does not matter that the two charges arose out of the same transaction. *Hull,* 149 N.H. at 717. In the context of a conspiracy conviction, conspiring to commit a crime and actually committing it are two separate offenses. *State v. Chaisson,* 123 N.H. 17, 24 (1983) (conspiracy to receive stolen property is a separate and distinct crime from the crime of receiving stolen property). The act which the crime of conspiracy punishes is an *agreement* to commit or cause the commission of a crime. *Id.* Applying these principles, we conclude that the defendant's double jeopardy rights under the New Hampshire Constitution were not violated.

The indictment for first degree murder, RSA 630:1-a; RSA 626:8, stated:

Sanchez purposely caused the death of her aunt, Lucienne Lemaire, in that, with the purpose of promoting or facilitating the murder of Lucienne Lemaire, Sanchez solicited Baltazar Salas-Robles to commit the murder of Lucienne Lemaire by promising him money for killing her; Sanchez transported Robles to Lemaire's residence; Sanchez waited while Robles killed Lemaire by strangling her; and Sanchez transported Robles away from Lemaire's residence after the murder.

The indictment for conspiracy to commit murder, RSA 629:3; RSA 630:1-a, stated:

In that, with the purpose that the murder of Lucienne Lemaire be committed, Sanchez agreed with Baltazar Salas-Robles to cause the commission of Lemaire's murder, a crime defined by statute. In furtherance of the conspiracy at least one of the following overt acts was committed by at least one of the conspirators:

1. Sanchez promised Robles money for killing Lemaire; or
2. Sanchez called Lemaire to tell her that Robles would come to her residence that evening to bring a gift or food in order to insure that Lemaire would admit Robles to her residence; or
3. Sanchez transported Robles to Lemaire's residence; or
4. Sanchez waited while Robles entered Lemaire's residence; or
5. Robles strangled Lemaire; or
6. Robles pulled items out of drawers in Lemaire's bedroom to give her residence the appearance of having been ransacked; or
7. Sanchez picked Robles up outside of Lemaire's residence; or
8. Sanchez transported Robles away from Lemaire's residence after the murder.

As charged, each indictment required the State to prove a fact not necessary to the other. The statutory offense of conspiracy to commit murder, as set forth in RSA 629:3, I, required the State to prove an agreement between the defendant and Salas-Robles to commit the murder of Lemaire. Thus, the State was required to prove that the defendant purposely agreed with Salas-Robles to commit the crime of murder, and that one of them carried out an overt act in furtherance of the conspiracy. *See* RSA 629:3, I. The offense of first degree murder required proof that the defendant purposely caused the death of Lemaire. *See* RSA 630:1-a

I(a). In addition, RSA 630:1-a, II required the State to prove that the act was "deliberate and premeditated." Thus, the State was required to prove that the defendant acted purposely in causing Lemaire's death and that she acted with premeditation and deliberation.

 The State did not have to prove the existence of an agreement, required for the conspiracy conviction, to prove the first degree murder charge. Thus, the evidence required to prove the first degree murder charge would not have sustained the conspiracy to commit murder charge. Likewise, the conspiracy indictment did not require the State to prove the enhanced mental state of deliberation and premeditation, required for a first degree murder conviction. Thus, the evidence required to prove the conspiracy to commit murder charge would not have sustained the first degree murder charge. Therefore, we conclude that the defendant's convictions for the two offenses as charged do not offend double jeopardy under the New Hampshire Constitution.

Our analysis applying the State Constitution's "difference in evidence test" disposes of the defendant's claim under the Federal Constitution. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *MacLeod*, 141 N.H. at 434. Therefore, we reach the same result under the Federal Constitution as we do under the State Constitution.

*Affirmed.*

DALIANIS, DUGGAN and GALWAY, JJ., concurred.