Carroll
No. 2006-040

THE STATE OF NEW HAMPSHIRE

v.

NATHAN RAVELL

Argued: February 22, 2007
Opinion Issued: April 19, 2007

*Kelly A. Ayotte,* attorney general (*Peter C.L. Roth,* senior assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein,* deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Nathan Ravell, appeals his conviction after a bench trial in Superior Court (*O'Neill,* J.) on nine counts of possession of child pornography in violation of RSA 649-A:3 (Supp. 2006). We affirm.

The following appears in the record: The defendant was arrested when he was preparing to meet with someone whom he believed was a fourteen-year-old boy, but who was, in fact, an undercover police officer. At the time of his arrest, the defendant possessed a CD-ROM containing pornographic images of children in violation of RSA 649-A:3, I(e), which makes it a felony for a person to knowingly "buy[], procure[], possess[], or control[] any visual representation of a child engaging in sexual activity." After pleading guilty, the defendant was convicted in Cheshire County Superior Court and sentenced for possession of child pornography.

Subsequently, the defendant was charged in Carroll County with possessing pornographic images of children found on his home computer. Among those images were five that the Carroll County Superior Court found were "the same" as those on the CD-ROM that had been the basis for the Cheshire County convictions. The defendant moved to dismiss the Carroll County indictments, citing his right to be shielded from multiple punishments for the same offense under the Double Jeopardy Clauses of the Federal and State Constitutions. *See* U.S. CONST. amend. V; N.H. CONST. pt. I, art. 16. The trial court denied this motion.

On appeal, the defendant argues that the trial court erred by denying his motion to dismiss. He urges us to vacate his convictions and sentences on the Carroll County indictments, arguing that they violate the prohibition against double jeopardy under the Federal Constitution. He does not advance a double jeopardy argument under the State Constitution.

 The Double Jeopardy Clause of the Federal Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V; *see Brown v. Ohio,* 432

U.S. 161, 164 (1977). It "protects a defendant's rights in three ways: First, it protects against a second prosecution for the same offense after an acquittal. Second, it protects against a second prosecution for the same offense after a conviction. Third, it protects against multiple punishments for the same offense." *State v. Bailey*, 127 N.H. 811, 814 (1986) (quotation omitted); *see United States v. Ursery*, 518 U.S. 267, 273 (1996). The defendant asserts a violation of the third category of protections. To the extent that he asserts a violation of the second category of protections, this argument is not developed, and we decline to review it. *In the Matter of Hampers & Hampers*, 154 N.H. 275, 291-92 (2006). We therefore focus our discussion upon whether, by denying his motion to dismiss the Carroll County indictments, the trial court subjected the defendant to multiple punishments for the same offense.

■ To determine whether a defendant is subject to multiple punishments for the same offense, we must determine the "unit of prosecution" intended by the legislature. *State v. Cobb*, 143 N.H. 638, 647 (1999) (federal double jeopardy analysis); *see Sanabria v. United States*, 437 U.S. 54, 69-70 (1978). "We give the language of a statute its commonsensical meaning." *Cobb*, 143 N.H. at 647 (quotation omitted).

RSA 649-A:3, I(e) pertains to "any visual representation of a child engaging in sexual activity." "Visual representation" is further defined as "any pose, play, dance or other performance, exhibited before an audience or reproduced in or designed to be reproduced in any book, magazine, pamphlet, motion picture film, photograph or picture." RSA 649-A:2, IV (1996).

■ We have already held that this language "shows a legislative intent that the displaying or possessing of *each photograph* constitutes a separate offense." *Cobb*, 143 N.H. at 647 (emphasis added). "The legislature intended the unit of prosecution to be each separate book, magazine, pamphlet, motion picture film, photograph, or picture." *Id.* at 647-48. Put another way, the legislature intended the unit of prosecution to be each separate visual representation or each image. Here, therefore, it did not violate the Federal Double Jeopardy Clause to punish the defendant for each image he possessed. Consistent with the legislature's intent, he could be punished in Cheshire County for the five images he possessed on the CD-ROM and punished in Carroll County for the identical five images he possessed on his computer hard drive without violating double jeopardy.

We find support for our interpretation of the statute in RSA 649-A:1 (1996), the legislature's statement of intent. RSA 649-A:1 reads in pertinent part:

I. The legislature finds that there has been a proliferation of exploitation of children through their use as subjects in sexual performances. . . .

II. . . . [T]he legislature urges law enforcement officers to aggressively seek out and prosecute those who violate the provisions of this chapter.

The purpose of the statute, therefore, is to prevent the proliferation of child pornography through the aggressive enforcement of the statute's provisions. It is consistent with this intent to punish the defendant separately for each image possessed on his CD-ROM and computer hard drive. Given this intent, "it is unreasonable to suggest that the legislature intended a single penalty without regard for the volume of child pornography . . . [and] the number of separate volitional acts required to obtain and store it." *State v. Multaler*, 643 N.W.2d 437, 451 (Wis. 2002) (quotation, brackets and ellipsis omitted). By using the word "any," "a term of great breadth" which, "[r]ead naturally . . . has an expansive meaning," *United States v. Ickes*, 393 F.3d 501, 504 (4th Cir. 2005) (quotation omitted), the legislature gives this statute great reach, consistent with its stated intent. The small unit of prosecution was intended to stop proliferation in each and every instance.

Courts in other jurisdictions have similarly interpreted their analogous state statutes. In *Multaler*, for instance, the court construed a statute that criminalized the possession of "any undeveloped film, photographic negative, photograph, motion picture, videotape or other pictorial reproduction . . . of a child engaged in sexually explicit conduct." *Multaler*, 643 N.W.2d at 450 (quotation omitted). The court ruled that the legislature's use of the word "any" evinced its intent to prosecute for "each photograph or pictorial reproduction." *Id.* at 451. The court concluded that "each image [the defendant] possessed could be prosecuted separately" and punished separately. *Id.*

 The defendant contends that the legislature intended each "distinct visual representation" to be the unit of prosecution and that the prohibition against double jeopardy is triggered by punishment for "duplicate copies of the same visual representation." He asserts that because the images on the CD-ROM and on his hard drive were identical, he could not be punished separately for possessing each image. We disagree. The statutory language at issue unambiguously demonstrates that the possession of "any" visual representation constitutes a separate offense, regardless of whether that visual representation is a duplicate copy of another visual representation. "If the legislature had intended

possession, regardless of the number of [visual representations], to be the unit of prosecution, it could have phrased the statute accordingly; *e.g.*, 'it is unlawful to possess one or more [visual representations of a child engaging in sexual activity].'" *State v. Stratton*, 132 N.H. 451, 455 (1989). The legislature's intent was to combat the proliferation of child pornography by targeting *any* visual representation of a child engaged in sexual activity. To interpret the statute in the way the defendant suggests would dilute this far-reaching proscription.

The defendant also argues that because the statute is ambiguous, the rule of lenity applies. The rule of lenity "forbids interpretation of a federal criminal statute so as to increase the statutory penalty where Congress' intent is unclear"; it "is applicable only where statutory ambiguity has been found." *Cobb*, 143 N.H. at 647 (quotations omitted). Because we hold that the statute is unambiguous, the rule of lenity does not apply.

Additionally, the defendant asserts that our interpretation of the statute will lead to absurd results such as permitting multiple punishments of a defendant for multiple images contained on a computer hard drive, where the hard drive has backed up those images automatically. Such a result may well be distinguishable, however this case is not before us.

Therefore, for all of the reasons set forth above, we conclude that the trial court did not err when it denied the defendant's motion to dismiss the Carroll County indictments. Subjecting him to punishment for these indictments did not violate the Federal Double Jeopardy Clause's protection against multiple punishments for the same offense.

*Affirmed.*

GALWAY and HICKS, JJ., concurred; DUGGAN, J., with whom BRODERICK, C.J., joined, dissented.

DUGGAN, J., dissenting. I would hold that the statute is ambiguous, apply the rule of lenity, and vacate the defendant's convictions. Accordingly, I respectfully dissent.

I

The Federal Double Jeopardy Clause "does not prohibit the imposition of all additional sanctions that could, in common parlance, be described as punishment." *Hudson v. United States*, 522 U.S. 93, 98-99 (1997) (quotations omitted). Instead, it "protects only against the imposition of multiple criminal punishments for the same offense, and then only when such occurs in successive proceedings." *Id.* at 99 (citations omitted). "The Clause ... does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *United*

*States v. Patel*, 370 F.3d 108, 114 (1st Cir. 2004) (quotation omitted). "The limited effect of the Double Jeopardy Clause on multiple punishment claims derives from the principle that the power to define criminal offenses and prescribe punishments ... belongs solely to the legislature." *Id.*

Where, as here, a defendant asserts a double jeopardy violation, arguing that he is being punished multiple times under the same statute for the same offense, courts must inquire what "unit of prosecution" was intended by the legislature as the punishable act. *Sanabria v. United States*, 437 U.S. 54, 69 (1978); *State v. Stratton*, 132 N.H. 451, 455 (1989). "[O]nce [the legislature] has defined a statutory offense by its prescription of the allowable unit of prosecution, that prescription determines the scope of protection afforded ...." *Sanabria*, 437 U.S. at 69-70 (quotations and citations omitted). Identifying the appropriate unit of prosecution is a matter of statutory interpretation. *United States v. Verrecchia*, 196 F.3d 294, 297-98 (1st Cir. 1999). Where the statute is ambiguous or legislative intent is unclear, courts should apply the rule of lenity to resolve the ambiguity. *Bell v. United States*, 349 U.S. 81, 83 (1955); *State v. Bailey*, 127 N.H. 811, 814 (1986).

## II

To be sure, the legislature could make the possession of each individual picture—whether an identical copy of another picture or not—a crime. The question presented by this appeal, however, is whether it did. Answering this question requires a determination as to whether the legislature intended the five images at issue to constitute different "units of prosecution" for which the defendant can be punished separately under the statute. In making this determination, we construe Criminal Code provisions according to the fair import of their terms and to promote justice. RSA 625:3 (1996); *State v. Porelle*, 149 N.H. 420, 424 (2003).

The plain language of the statute does not provide a clear answer. RSA 649-A:3, I(e) (Supp. 2006) provides, "A person is guilty of a felony if such person: ... [k]nowingly buys, procures, possesses, or controls any visual representation of a child engaging in sexual activity." Thus, pursuant to the statute, the "unit of prosecution" is any "visual representation." A visual representation is defined as "any pose, play, dance or other performance, exhibited before an audience or reproduced in or designed to be reproduced in any book, magazine, pamphlet, motion picture film, photograph or picture." RSA 649-A:2, IV (1996). The phrase "any pose, play, dance or other performance" is ambiguous. On one hand, it could mean, as the majority holds, each individual picture. It could, however, be read to mean that identical copies of pictures are not separate visual representations because each identical copy contains the same identical

pose. Where the legislature wanted to penalize conduct involving copies of pornographic images, it was able to do so in clear and plain language. *See* RSA 649-B:3, I(b) (Supp. 2006). Here, it did not.

While the majority cites *State v. Cobb*, 143 N.H. 638, 647-48 (1999), as support for the position that "the legislature intended the unit of prosecution to be each separate visual representation or image," *Cobb* is not controlling here because in that case, the court specifically noted that "[e]ach photograph is different." *Cobb*, 143 N.H. at 647. Here, by contrast, each of the photographs at issue is identical to another for which the defendant already had been punished.

The majority also cites *State v. Multaler*, 643 N.W.2d 437 (Wis. 2002), as support for the position that a unit of prosecution is each separate image. However, it is not clear from the opinion in *Multaler* whether the defendant there was being punished, as in *Cobb*, for different photographs or, as here, for identical copies of the same photograph. Rather, in *Multaler* the defendant argued, in regard to his multiplicity claim, that the legislature intended the unit of prosecution to be one charge for each disk, not for each image on a disk. *Id.* at 448.

Furthermore, the majority's interpretation of the word "any" is not a universally held position. For example, one court held:

> If the word "a" is used, the courts have discerned a legislative intent that each item of contraband be the basis for a separate unit of prosecution; if the word "any" is used, the courts have discerned a legislative intent that all of the contraband be viewed in the episodic sense with only a single unit of prosecution intended.

*State v. Farnham*, 752 So. 2d 12, 14 (Fla. Dist. Ct. App. 2000).

Nor does the statutory scheme, when viewed in its entirety, make clear what "unit of prosecution" the legislature intended to punish. RSA 649-A:1 (1996) sets forth the legislature's statement of its purposes in enacting the statute. It provides:

> Declaration of Findings and Purposes.
>
> I. The legislature finds that there has been a proliferation of exploitation of children through their use as subjects in sexual performances. The care of children is a sacred trust and should not be abused by those who seek to profit through a commercial network based upon the exploitation of children. The public policy of the state demands the protection of children from exploitation through sexual performances.

II. It is the purpose of this chapter to facilitate the prosecution of those who exploit children in the manner specified in paragraph I. In accordance with the United States Supreme Court's decision in New York v. Ferber, this chapter makes the dissemination of visual representations of children under the age of 16 engaged in sexual activity illegal irrespective of whether the visual representations are legally obscene; and the legislature urges law enforcement officers to aggressively seek out and prosecute those who violate the provisions of this chapter.

Although both of these paragraphs emphasize the indisputably important interest in protecting children from exploitation, neither sheds any light upon whether the legislature viewed the possession of, for example, five identical copies of an image to be a more serious offense than the possession of, for example, four. Nor, upon review, does the legislative history shed any light on this issue. Thus, since the phrase "visual depiction" is ambiguous, we must turn to the rule of lenity.

## III

"The rule of lenity is not to be applied lightly: it applies only if, after seizing everything from which aid can be derived, [the court] can make no more than a guess as to what [the legislature] intended." *United States v. Rolfsema*, 468 F.3d 75, 80 (1st Cir. 2006) (quotation omitted).

Under the rule of lenity, grievous ambiguity in a penal statute is resolved in the defendant's favor. The simple existence of some statutory ambiguity, however, is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree. Rather, the rule only applies if there is a grievous ambiguity or uncertainty in the statute.

*United States v. Councilman*, 418 F.3d 67, 83 (1st Cir. 2005) (quotations and citations omitted); *see also State v. Parker*, 155 N.H. 89, 92 (2007).

Here, the statute contains textual ambiguity and, for the reasons stated above, neither the plain language of the statute, nor its legislative history provides any clarity. *See, e.g., Dixson v. United States*, 465 U.S. 482, 491 (1984) ("If the legislative history fails to clarify the statutory language, our rule of lenity would compel us to construe the statute in favor of ... [the] criminal defendant[] in th[is] case[]."). Furthermore, because this ambiguity can result in a defendant being subjected to significantly higher punishment depending upon how it is interpreted, the ambiguity is "grievous." Therefore, the rule of lenity applies and we should resolve the statute in the defendant's favor. Accordingly, lenity requires that a "unit of

prosecution" does not include possession of identical copies of an image for which a defendant already has been punished.

## IV

Using a possession offense to punish a defendant for possessing identical copies of an image does not appeal to a sense of fairness. It would make little sense for a defendant who possesses five identical copies of an image to be punished with five separate felony convictions, while another defendant who possesses three or four identical images receives only three or four such convictions. The legislature has created other means to punish this conduct.

For example, although it is a very real concern that a defendant who possesses multiple copies of an image will sell or distribute at least some of those copies to other individuals, our statute punishes sales and distribution separately from possession. *Compare* RSA 649-A:3, I(a) *with* RSA 649-A:3, I(e). Since our legislature has created a separate mechanism to punish individuals who sell or distribute child pornography, it is through that mechanism that such conduct should be punished. Likewise, since our legislature has created a separate mechanism for punishing individuals who reproduce child pornography through computerized means, *see* RSA 649-B:3, I(b), it is through that mechanism that such conduct could also potentially be punished. The conduct at issue here, while grave, seems to have been cabined into a crime where it simply does not fit.

To the extent a defendant has a large quantity of identical pornographic images, the quantity of images can be used as evidence in connection with, for example, a prosecution for selling or delivering pornography under RSA 649-A:3, I(a) or for reproducing images contrary to RSA 649-B:3, I(b). This approach is consistent with how courts have analyzed "unit of prosecution" and double jeopardy issues in drug cases prosecuted under statutes criminalizing possession of, possession with intent to distribute, and distribution of controlled substances. *See, e.g., Commonwealth v. Rabb*, 725 N.E.2d 1036, 1041-43 (Mass. 2000) (involving charges for sale of and intent to sell controlled substances).

## V

Finally, the majority's holding is decided solely under the Federal Constitution. Nothing in today's opinion prevents another defendant from bringing a state constitutional claim in a future case. *See Stratton*, 132 N.H. at 454 (upholding prosecution on six indictments for possession of six different firearms by a convicted felon because "proof of the elements of the crimes *as charged* [would] in actuality require a difference in

evidence"); *see also State v. Sanchez*, 152 N.H. 625, 630 (2005). Accordingly, for the foregoing reasons, I respectfully dissent.

BRODERICK, C.J., joins in the dissent.