# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Sedelsky*, 2013 IL App (2d) 111042

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRYAN SEDELSKY, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-1042 |
| Filed | September 26, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's possession of duplicate digital images of a young girl stored in the same medium did not constitute two separate offenses pursuant to the one-act, one-crime doctrine; therefore, the appellate court vacated defendant's conviction and sentence on one of the two counts of possessing child pornography. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 10-CF-1902; the Hon. Theodore S. Potkonjak, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and vacated in part. |

Counsel on
Appeal

Thomas A. Lilien and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (Lawrence M. Bauer and Jay Paul Hoffmann, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.

Justices Birkett and Spence concurred in the judgment and opinion.

## OPINION

¶ 1    Following a jury trial, defendant, Bryan Sedelsky, was found guilty of three counts of possession of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2008)), and the trial court sentenced him to five years' imprisonment for each conviction, to run concurrently. Defendant argues on appeal that one of his convictions should be vacated because two counts were based on possession of an identical image stored in the same digital medium. We agree and reverse defendant's conviction of count III and vacate the corresponding sentence.

¶ 2                                I. Background

¶ 3    On June 30, 2010, the State charged defendant by indictment with three counts of child pornography. Count I related to possession of a computer image entitled "yngbigirl1_o_50465483.jpg." Count II related to possession of a computer image entitled "yngbigirl1_0_50577108.jpg." Count III related to possession of a computer image entitled "yngbigirl1_0_50577109.jpg."

¶ 4    A trial commenced on June 27, 2011. Blake DeWelde, a Round Lake Beach police officer, testified that on June 7, 2010, he arrived at defendant's apartment with other investigators to execute a search warrant. Defendant admitted that he had accounts with a website known as Mbuzzy. Defendant also turned over two cell phones that were admitted into evidence. Two T-Mobile phone bills for defendant's cell phone number were also retrieved and admitted into evidence. The bills show defendant's cell phone number but do not provide any details regarding uploaded images. Defendant's notebook, which contained information regarding his Mbuzzy accounts and numerous website addresses, was retrieved and admitted into evidence.

¶ 5    Ryan Nobrega, vice president of products for Send Me, Inc., the parent company of Mbuzzy, testified that Mbuzzy is a social network similar to Myspace or Facebook. The site

allows users to create account profiles, upload photographs, and chat with other users. The site works heavily with mobile-phone users. Mbuzzy maintained records of user profiles as part of its ordinary course of business. Nobrega identified Mbuzzy user profile information for the user names "yngbigirl1, cuteguy2010, and iluvynggirls." In December 2009, Nobrega had an employee named Wei Liu. Liu handled all content moderation issues and supported the help desk. In December 2009, Liu made a report to the National Center for Missing and Exploited Children (NCMEC) with Nobrega's knowledge and assistance. Nobrega identified People's Exhibit Nos. 13, 14, and 15 as images reported to NCMEC. People's Exhibit No. 13 was an image with the file name "yngbigirl1_0_50465483.jpg"; People's Exhibit No. 14 was an image with the file name "yngbigirl1_0_50577108.jpg"; and People's Exhibit No. 15 was an image with the file name "yngbigirl1_0_50577109.jpg." Exhibit Nos. 13 and 14 contained the same image.

¶ 6    The images were being stored on Mbuzzy's main server in California for username "yngbigirl1." Nobrega testified that defendant's T-Mobile phone number was connected to the Mbuzzy "yngbigirl1" account that uploaded these images. Nobrega explained that an Mbuzzy customer could upload images from a computer, in which case an IP address would be seen. A person could also use a cell phone, in which case the image would be sent to Mbuzzy's computer as an e-mail with an attachment. Mbuzzy's computer would then pull the e-mail, process it, and attach the image to the user's account. Using People's Exhibit No. 11, Nobrega identified that 25 media uploads were done from defendant's phone on December 16, 2009, within a 4-minute time span. People's Exhibit No. 4 showed 25 thumbnail images taken from yngbigirl1's Mbuzzy account; 4 images were identical to Exhibit Nos. 13 and 14; 3 images were identical to Exhibit No. 15. People's Exhibit No. 4 was not published, because defendant was not charged with possessing the other photos. Exhibit No. 11 does not depict or otherwise identify what image was being sent to Mbuzzy; it merely states "media_upload" and specifies that the upload address was defendant's cell phone number @tmomail.net. Nobrega was not asked whether these images were visible to any other Mbuzzy user; he merely testified that the images were stored in defendant's account.

¶ 7    Michael Bruns, an investigator with the Illinois Attorney General's office, testified that in early January 2010 he received a case from NCMEC involving defendant's Mbuzzy account. Bruns went to defendant's home on June 7, 2010, and spoke to defendant and his aunt, Jody, who also lived in the residence. He informed defendant that he was there, with other investigators, to execute a search warrant. Defendant signed a *Miranda* waiver form and agreed to speak to Bruns. Defendant admitted that he had a T-Mobile cell phone number and that he used his cell phone to access the Internet, download pornography, download ringtones, play games, and send and receive text messages. Defendant admitted that he had three accounts with Mbuzzy: cuteguy2010, yngbigirl1, and iluvynggirls. Defendant admitted that he would search the Internet using search terms such as "lolita, jailbait, YO 15, YO 16" to look for suspect images. Bruns had a copy of the image contained in People's Exhibit Nos. 13 and 14 and copies of multiple images that NCMEC had sent to him. These images were labeled People's Exhibit Nos. 3 and 4. Bruns showed these images to defendant, who signed and dated the images. Defendant admitted that he found these images on the Internet through

his phone and uploaded them to his "yngbigirl1" Mbuzzy account. Bruns identified People's Exhibit Nos. 13, 14, and 15 as images found among the thumbnail images in Exhibit Nos. 3 and 4. Bruns testified that defendant told him that Mbuzzy was an online storage space where he could store images because his phone did not have enough memory. Defendant said that he had deleted his Mbuzzy account and that it had been deleted for about six months, meaning he deleted the account in December 2009. He told Bruns that he deleted it because the images he uploaded were "too young."

¶ 8  Dean Kharasch, an investigator with the Lake County State's Attorney's office, testified that the cell phones retrieved had defendant's T-Mobile phone number, which he confirmed using cell phone forensic software.

¶ 9  The jury returned guilty verdicts on all three counts. Defendant moved for a new trial, and the trial court denied that motion. The court sentenced defendant to concurrent five-year prison terms. Defendant moved for reconsideration of his sentence, and the trial court denied that motion. Defendant timely appealed.

¶ 10                                    II. Discussion

¶ 11  On appeal, defendant contends that one of his convictions must be vacated because the same image cannot sustain two convictions where that image was stored in the same digital medium, albeit under different file names. In support of his contention, defendant argues that two of the three images were identical and that no images were recovered from his cell phone, but rather all three were recovered from his Mbuzzy account. Defendant acknowledges that this issue was not raised in the trial court, but he argues that we should review his claim under the plain-error doctrine.

¶ 12  The plain-error doctrine allows a reviewing court to address defects affecting substantial rights if (1) the evidence is closely balanced or (2) fundamental fairness requires review. *People v. Carter*, 213 Ill. 2d 295, 299 (2004). The second prong of plain error has been invoked where a defendant has a conviction that violates the one-act, one-crime rule, because such a surplusage conviction affects the integrity of the judicial process. *Id.* Therefore, we agree with defendant that, despite forfeiture rules, we may review his claim that one of his convictions must be vacated under the one-act, one-crime rule. See *id.* at 299-300.

¶ 13  Because this case requires a review of the child pornography statute to determine whether separate offenses may be charged for simultaneous possession of multiple copies of the same image, we use *de novo* review. *Id.* at 300-01. Statutory construction requires us to ascertain and give effect to the intent of the legislature. *Id.* at 301. The most reliable indicator of the legislative intent of a statute is its language, which, if plain and unambiguous, must be read without exception, limitation, or condition. *Id.* Criminal statutes must be strictly construed in the defendant's favor. *Id.*

¶ 14  Section 11-20.1(a)(6) of the Criminal Code of 1961 (the Code) (720 ILCS 5/11-20.1(a)(6) (West 2008)) provides that a person commits the offense of possessing child pornography if he or she:

"with knowledge of the nature or content thereof, possesses any film, videotape, photograph or other similar visual reproduction or depiction by computer of any child

-4-

*** whom the person knows or reasonably should know to be under the age of 18 ***, engaged in any activity described in subparagraphs (i) through (vii) of paragraph (1) of this subsection."

¶ 15    Defendant relies on *People v. McSwain*, 2012 IL App (4th) 100619, for his position that his convictions of possessing the duplicate image violate the one-act, one-crime rule. In *McSwain*, the defendant was convicted of five counts of possessing child pornography after he received one e-mail that contained five different images. *McSwain*, 2012 IL App (4th) 100619, ¶¶ 1, 14. On appeal, the defendant argued that his simultaneous possession of five images in a single e-mail constituted a single offense. *Id.* ¶ 46. The Fourth District agreed, holding that the word "any" in section 11-20.1(a)(6) of the Code did not adequately define the "allowable unit of prosecution" as explained in *People v. Carter*, 213 Ill. 2d 295 (2004). *McSwain*, 2012 IL App (4th) 100619, ¶ 59. Because the statute did not define the "allowable unit of prosecution," the statute was ambiguous and had to be construed in the manner that favored the defendant. *Id.* ¶ 64. The Fourth District, therefore, vacated four of the defendant's five convictions. *Id.*; see also *State v. Sutherby*, 204 P.3d 916, 922 (Wash. 2009) (finding that statute similar to the Illinois statute, using "any," was ambiguous and must be construed in favor of the defendant and thereby vacating 9 of the defendant's 10 convictions of possession of child pornography).

¶ 16    *McSwain* relied on the supreme court's decision in *Carter* to vacate the defendant's convictions. In *Carter*, the court interpreted the unlawful-possession-of-a-weapon statute, which provided, like the child pornography statute, that it was unlawful to possess "any firearm or any firearm ammunition." (Emphasis omitted.) (Internal quotation marks omitted.) *Carter*, 213 Ill. 2d at 301. The court stated that "any" could mean either the singular or the plural, and when a criminal statute is capable of two or more constructions, it must adopt the construction that favors the accused. *Id.* at 301-02. The court stated that "[w]hether the legislature intended for the simultaneous possession of weapons and ammunition to be the same offense or separate offenses requires us to determine the statute's 'allowable unit of prosecution.' " *Id.* at 302. Because the term "any" in the statute failed to define it, the court held that the defendant's multiple convictions of simultaneously possessing two firearms and ammunition clips could not stand. *Id.*

¶ 17    Here, the State argues that *McSwain* was wrongly decided and in any event is distinguishable from the facts presented. We need not determine whether *McSwain* was wrongly decided based on its facts, because we agree that the facts of this case are distinguishable. In *McSwain*, the defendant accepted one e-mail that contained multiple different images and stored the e-mail in a folder. Here, defendant uploaded items from his cell phone and stored them in his Mbuzzy account. The question here is not whether defendant can be convicted of simultaneously possessing more than one image contained in one e-mail. Rather, we must determine whether defendant may be convicted twice of possessing duplicate digital images stored in the same digital medium, but under different file names.

¶ 18    Nonetheless, although the facts are distinguishable, the analysis in *McSwain* is applicable here. Under the narrow facts of this case, defendant's convictions may not stand under the one-act, one-crime rule when the statute is unclear whether a duplicate digital image stored

-5-

in the same medium constitutes a separate offense.

¶ 19    Under *People v. King*, 66 Ill. 2d 551, 566 (1977), a court must determine whether a defendant's conduct consisted of separate acts or a single act. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). Multiple convictions are improper if they are based on precisely the same physical act. *Id.* If the court determines that the defendant committed multiple acts, the court then must determine whether any of the offenses are lesser included offenses. *Id.* If so, then, under *King*, multiple convictions are improper. *Id.* As the *Carter* court explained, the defendant may be prosecuted according to the statute's defined "allowable unit of prosecution." *Carter*, 213 Ill. 2d at 302. It is the legislature, and not the prosecution, that establishes and defines offenses. *Sanabria v. United States*, 437 U.S. 54, 69 (1978). "Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses." *Id.* However, once the legislature has defined the offense by its prescription of the "allowable unit of prosecution," it is this unit that governs whether a particular course of conduct involves one or more distinct "offenses" under the statute. *Id.* at 69-70. Section 11-20.1(a)(6) of the Code provides that the relevant "allowable unit of prosecution" is possession of "any *** depiction by computer" of a pornographic image of a child. 720 ILCS 5/11-20.1(a)(6) (West 2008). The statute defines a "depiction by computer" as a "computer program or data that, after being processed by a computer either alone or in conjunction with one or more computer programs, results in a visual depiction on a computer monitor, screen, or display." 720 ILCS 5/11-20.1(f)(5) (West 2008). The statute further defines "computer program" and "data" by referring to section 16D-2 of the Code (720 ILCS 5/16D-2(b), (c) (West 2008)). 720 ILCS 5/11-20.1(f)(6) (West 2008). Relevant to this case, "data" is defined as a:

> "representation of information, knowledge, facts, concepts or instructions, including program documentation, which is prepared in a formalized manner and is stored or processed in or transmitted by a computer. Data shall be considered property and may be in any form including but not limited to printouts, magnetic or optical storage media, punch cards or data stored internally in the memory of the computer." 720 ILCS 5/16D-2(c) (West 2008).

¶ 20    "Any," on the other hand, is not defined by the statute. In *Carter*, the supreme court concluded that the term "any" could be construed as " 'some,' 'one out of many' or 'an indefinite number.' " *Carter*, 213 Ill. 2d at 301 (citing Black's Law Dictionary 94 (6th ed. 1990)). It concluded that "any" had "categorical meanings of 'any one of a kind,' 'any kind,' or 'any number.' " *Id.* at 301-02. Thus, "any" could mean either the singular or the plural, and where a criminal statute is capable of more than one construction, the court must adopt the construction that favors the accused. *Id.* at 302. The court concluded that the word "any" in the statute was ambiguous as to whether the legislature intended for the simultaneous possession of weapons and ammunition to be the same offense or separate offenses. *Id.* Thus, it construed the statute in favor of the defendant and held that only one conviction of unlawful possession of weapons could be entered for the defendant's simultaneous possession of two firearms and firearm ammunition. *Id.* at 304; see also *People v. Sotelo*, 2012 IL App (2d) 101046, ¶ 10 (distinguishing language of the Firearm Owners Identification Card Act (430 ILCS 65/2(a)(1) (West 2008)) from unlawful possession statute

in *Carter* to determine that the statute unambiguously allowed separate convictions of possession of firearm without a FOID card and possession of firearm ammunition without a FOID card where the statute listed firearm and ammunition separately).

¶ 21    Likewise, in this case, the term "any" does not indicate whether the simultaneous possession of a duplicate "depiction by computer" could constitute a separate offense. Thus, we must construe the statute in defendant's favor and hold that, on the limited facts present in this case, only one conviction of possessing child pornography can be entered for defendant's possession of the same digital image stored in the same digital medium.

¶ 22    We agree with the State that *People v. Lamborn*, 185 Ill. 2d 585 (1999), affirmed convictions of the simultaneous possession of two lewd photographs. However, we disagree with the State that *Lamborn* renders *McSwain* incorrectly decided or is comparable to the facts of this case. In *Lamborn*, the defendant took different photographs of children in lewd poses. *Id.* at 587. The defendant's conduct in *Lamborn* was therefore dissimilar to that of the defendant in *McSwain*, who did nothing more than receive one e-mail containing multiple images. Further, the defendant in *Lamborn* possessed *different* images, unlike defendant here, whose Mbuzzy file contained the *same* image saved with different file names.

¶ 23    We also agree with the State that federal courts have held that a defendant may be charged with possession of child pornography where the images are stored in different media, such as a computer hard drive, book, or compact disc. *United States v. Schales*, 546 F.3d 965, 979 (9th Cir. 2008). In *Schales*, law enforcement recovered numerous child pornography images from the defendant's computer hard drive, compact discs, and digital camera. *Id.* at 969-70. The prosecution charged the defendant with receipt and possession of images obtained through the Internet. The court held that the State's indictment was "multiplicitous" because it charged the defendant with receipt of the material by downloading it from the Internet and with possession of this material in the same medium. *Id.* at 980. It therefore concluded that his convictions of possessing and receiving the same materials violated the defendant's double jeopardy rights by subjecting the defendant to additional punishment for the same conduct. *Id.* The court noted that there would not have been a double jeopardy violation had the government distinctly charged the defendant both with the receipt of the images that he downloaded from the Internet and with the possession of the images that he transferred to and stored on compact discs. *Id.* The holding in *Schales*, therefore, does not support the State's position because, here, defendant was charged with possessing the same image in the same medium, obtained at nearly the same time. Further, the federal courts are not unanimous on this point. See *United States v. Chiaradio*, 684 F.3d 265 (1st Cir. 2012) (criticizing *Schales* in that it relied on a case involving a different section of the possession statute; stating that use of "one or more" rather than "any" in section at issue indicated the intent of Congress to include multiple matters in a unit of prosecution whereas "any" may indicate otherwise).

¶ 24    The State similarly cites to *State v. Liberty*, 370 S.W.3d 537 (Mo. 2012), for the proposition that multiple convictions may be entered when the prohibited items were acquired or possessed at different times. We agree with this proposition but a close reading of *Liberty* does not support the State's position in this case. The State argues that defendant separately downloaded several images from the Internet to his cell phone and then uploaded

these images to his Mbuzzy account at different, albeit close, points in time.

¶ 25    In *Liberty*, the defendant was charged with eight counts of possession of eight different images of child pornography. *Id.* at 540. The court vacated seven of the convictions, finding that the Missouri statute's use of the word "any" was ambiguous as to whether the statute intended to impose a separate punishment for *each item* of child pornography a person simultaneously possessed or whether it intended for only a single offense to be charged for each instance of possession. *Id.* at 547. The court agreed with other courts that the term "any" has typically been deemed ambiguous when determining the allowable unit of prosecution. *Id.* at 548. Like in *Carter*, the *Liberty* court held that, where the statute is ambiguous as to the "allowable unit of prosecution," it must apply the rule of lenity and interpret the statute in the defendant's favor. *Id.* at 549. The court left open the possibility that, had the State presented evidence that the defendant came to possess the pornographic materials at different dates or from different sources, multiple possession convictions would not violate the defendant's double jeopardy rights. *Id.* at 550.

¶ 26    We agree with the logic in *Carter* and *Liberty* that possession of "any *** depiction by computer" is ambiguous as to whether a defendant may be charged separately with possessing a duplicate image in the same medium. Here, the facts demonstrated only that the image was saved twice to the same medium and at nearly the same point in time. We disagree with the State's assertion that defendant separately uploaded the image from his cell phone. It is not clear from the facts whether the image was uploaded more than once, from more than one website, or from more than one source. The facts lead only to the inference that the image was saved twice, as the Mbuzzy records show only that 25 "media_upload" files were sent from defendant's phone to his Mbuzzy account within a 4-minute timespan. The State did not present any evidence that defendant uploaded the image from his phone on separate occasions. It is not clear whether defendant affirmatively uploaded the image twice and saved it twice, or merely saved the image twice. The State also did not present evidence that the image was saved anywhere other than in defendant's Mbuzzy account.

¶ 27    We reiterate that our holding today applies to the narrow facts presented. Different factual scenarios in other jurisdictions have produced different results. For instance, in *State v. McPherson*, 269 P.3d 1181, 1184 (Ariz. Ct. App. 2012), the court upheld separate convictions of and punishments for possessing different images on the same DVD because the statute provided for prosecution for each individual depiction. In *Pontius v. State*, 930 N.E.2d 1212, 1218 (Ind. Ct. App. 2010), the court held that the defendant's two convictions of possession of two identical child pornography videos did not violate double jeopardy principles where the defendant downloaded the videos at two separate times, on two separate computers, and at two separate locations. The court, however, specifically stated that, were the videos the product of data backup protocols or procedures, the statute might not allow for multiple convictions. *Id.* Similarly, in *State v. Ravell*, 922 A.2d 685, 686 (N.H. 2007), the defendant was convicted of possessing images of child pornography, stored on a compact disc, in one county; he was later convicted of possessing identical images on his home computer in another county. The court held that the convictions did not violate double jeopardy principles where the legislature intended the unit of prosecution to be each separate image. *Id.* at 687. Even in so holding, the court opined that the case would be distinguishable

where a defendant possessed multiple images contained on a computer hard drive because the hard drive backed up those images automatically. *Id.* at 688.

¶ 28    The facts of this case are distinguishable from *McPherson* and *Ravell* because defendant did not store the image in different forms. It is similarly distinguishable from *Pontius* because the State did not show that defendant downloaded and stored the image at substantially different times, on different computers, at different locations. See *United States v. Buchanan*, 485 F.3d 274, 282 (5th Cir. 2007) (holding that the defendant's convictions of receipt of four different images were multiplicitous where the government did not offer any proof that the defendant took more than one action to receive the images). Rather, the statute in question is similar to the statute in *Carter*, and like the *McSwain* court, under our facts, we find the term "any" ambiguous, requiring us to apply the rule of lenity. If the legislature's intention is contrary to our holding, or *McSwain*'s, then it may choose to amend the statute as it did following the *Carter* decision. Further, if the State had presented facts that established that defendant uploaded the image at substantially different times, and not just that he sent two requests to save the image within minutes, our analysis might be different. However, as the statute is written and under the facts adduced at trial, we must vacate one of defendant's convictions.

¶ 29    On a final note, we address the State's argument that the convictions must stand to support the purpose of the child pornography statute. Citing *People v. Geever*, 122 Ill. 2d 313 (1988), the State emphasizes that the statute is intended to prevent not only the production and dissemination of child pornography, but also its possession. *Id.* at 324. We recognize that the purpose of the child pornography statute is to "prevent the sexual abuse and exploitation of children by 'drying up' the market" for such materials. *People v. Myers*, 359 Ill. App. 3d 341, 345 (2005) (quoting *Geever*, 122 Ill. 2d at 326). However, we agree with the dissenting opinion in *Ravell* that "[u]sing a possession offense to punish a defendant for possessing identical copies of an image does not appeal to a sense of fairness." *Ravell*, 922 A.2d at 691 (Duggan, J., dissenting, joined by Broderick, C.J.). The dissent in *Ravell* noted that the legislature had created a separate mechanism to punish individuals who sell or distribute child pornography, which would address the defendant who possesses multiple copies with such an intention. *Id.* Further, the dissent agreed with other jurisdictions that applied the rule of lenity to statutes with language similar to the language in the New Hampshire statute. *Id.*

¶ 30    We find the dissent in *Ravell* persuasive in our analysis of the Illinois child pornography statute and the facts before us. Punishing defendant twice for possessing two duplicate digital images saved in the same medium does not affect the supply of this photograph, as an individual possessing a unique digital image can disseminate that single image as widely as an individual with two identical digital images. See *United States v. McNerney*, 636 F.3d 772, 780 n.4 (6th Cir. 2011). That the image cannot be viewed through any method other than accessing defendant's Mbuzzy account sways our opinion. This is not a scenario where the image has been stored in different locations or in different media such that the image is capable of wider or quicker dissemination. In this situation, our interpretation of section 11-20.1(a)(6) of the Code does not undermine the purpose of "drying up" the child pornography market. Furthermore, as the *Carter* court noted, the "legislature knows how to authorize, specifically, multiple convictions for simultaneous violations of a single criminal statute."

*Carter*, 213 Ill. 2d at 303. With respect to the unlawful possession statute at issue in *Carter*, the legislature later amended the statute to specifically state that the possession of each firearm or firearm ammunition constituted a single and separate offense. See 720 ILCS 5/24-1.1(e) (West 2010) (as amended by Pub. Act 94-284, § 10 (eff. July 21, 2005)). In the case of the child pornography statute, the legislature has simply not done this, and we will not rewrite the statute.

¶ 31　　In sum, we conclude that, because the child pornography statute is unclear as to whether the *same* image stored in the *same* digital medium can constitute a separate offense, we must adopt a construction that favors defendant. See *Carter*, 213 Ill. 2d at 312. Accordingly, defendant's multiple convictions of possessing the same photograph cannot stand under the one-act, one-crime doctrine.

¶ 32　　　　　　　　　　　　　　　III. Conclusion

¶ 33　　For the reasons set forth above, we reverse defendant's conviction of count III and vacate the corresponding sentence.

¶ 34　　Affirmed in part, reversed in part, and vacated in part.