PATIENCE DRAKE ROGGENSACK, C.J.
¶ 40. (concurring). The Majority opinion correctly applies well-established Wisconsin law, and therefore I join the opinion in full. I write separately to explain that there is an alternate way in which this case could have been analyzed. In so doing, I hope to encourage future parties who raise multiplicity challenges that are grounded in multiple charges under a single statute to address their challenges as "unit of prosecution" claims.
¶ 41. "The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and its parallel provision in the Wisconsin Constitution, Article I, Section 8(1), prohibit multiple punishments for the same offense." State v. Ziegler, 2012 WI 73, ¶ 59, 342 Wis. 2d 256, 816 N.W.2d 238. The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for *782 the same offense." State v. Davison, 2003 WI 89, ¶ 19, 263 Wis. 2d 145, 666 N.W.2d 1 (emphasis in original) (internal quotations omitted).
¶ 42. The last protection is commonly referred to as a "multiplicity" claim. "When a defendant is charged in more than one count for a single offense, the counts are deemed impermissibly multiplicitous." Ziegler, 342 Wis. 2d 256, ¶ 59. Multiplicity claims may arise when multiple counts are charged under the same statute for what is asserted to be the same conduct or when multiple counts are charged under different statutes for what is asserted to be the same conduct. In either case, their resolution will turn on legislative intent, in part, because the legislature is constitutionally delegated the substantive power to delineate and define crimes. Davison, 263 Wis. 2d 145, ¶ 31.
¶ 43. Wisconsin courts have analyzed both types of multiplicity claims using a two-step test. Id., ¶ 43. "First, the court determines whether the offenses are identical in law and fact using the 'elements-only' test set forth in Blockburger v. United States, 284 U.S. 299, 304 (1932)." Ziegler, 342 Wis. 2d 256, ¶ 60. "The results of the 'elements-only' test determine the presumption under which we analyze the second prong of our methodology." Id., ¶ 61 (citation omitted). "If the offenses are identical in law and fact, a presumption arises that the legislature did not intend to authorize cumulative punishments." Id. (citation omitted). "Conversely, if the offenses are different in law or fact, the presumption is that the legislature intended to permit cumulative punishments." Id., ¶ 62. See also Davison, 263 Wis. 2d 145, ¶ 43 ("First, the court determines whether the charged offenses are identical in law and fact using the Blockburger test.").
*783 ¶ 44. The Blockburger test was derived from the Court's analysis of the proper way to address multiple convictions that arose from under different statutory provisions. Blockburger, 284 U.S. at 304; see also Garrett v. United States, 471 U.S. 773, 778 (1985) ("Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature-in this case Congress-intended that each violation be a separate offense."). Therefore, Blockburger is not directly on point for instances in which a defendant is convicted under a single statute. However, Wisconsin courts have applied the two-step multiplicity test, and therefore the Blockburger test, to these situations. Specifically, we have used it to analyze situations in which a defendant receives multiple convictions under a single statute. See State v. Rabe, 96 Wis. 2d 48, 64-65, 291 N.W.2d 809 (1980); State v. Richter, 189 Wis. 2d 105, 108-09, 525 N.W.2d 168 (Ct. App. 1994) and other cases discussed below.
¶ 45. However, the unit of prosecution analysis is also applicable when multiple charges are made under the same statute. "The unit of prosecution is the manner in which a criminal statute permits a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses." Woellhaf v. People, 105 P.3d 209, 215 (Colo. 2005). In unit of prosecution cases, Wisconsin courts routinely apply the above-mentioned Blockburger test to determine if a defendant's convictions were multiplicitous. See, e.g., State v. Multaler, 2002 WI 35, ¶ 59, 252 Wis. 2d 54, 643 N.W.2d 437 ("Having determined that the charges are different in fact, we turn to examine the legislature's intent regarding the allowable unit of prosecution."); Rabe, 96 Wis. 2d at 64-65; Richter, 189 Wis. 2d at 108-09 ("In order to determine whether the three counts of bail jumping *784 were multiplicitous, we must apply a two-pronged test to the facts of this case .. "); State v. Hartnek, 146 Wis. 2d 188, 192, 430 N.W.2d 361 (Ct. App. 1988). However, in the context of multiple counts made under the same statute, the application of the Blockburger test may not work as well as Wisconsin courts have assumed.
¶ 46. For example, the first prong of Wisconsin's multiplicity analysis is potentially illusory when a defendant's convictions are for multiple violations of a single statute. "When a defendant is convicted for violating one statute multiple times, the same evidence test will never be satisfied." State v. Adel, 965 P.2d 1072, 1074 (Wash. 1998). "Two convictions for violating the same statute will always be the same in law, but they will never be the same in fact. In charging two violations of the same statute, the prosecutor will always attempt to distinguish the two charges by dividing the evidence supporting each charge into distinct segments." Id.[1]
*785 ¶ 47. Perhaps for this reason, other courts, including the United States Supreme Court, generally do not apply the Blockburger analysis to multiplicity challenges based on multiple charges under the same statute.[2] See generally Sanabria v. United States, 437 U.S. 54, 70 (1978) ("Because only a single violation of a single statute is at issue here, we do not analyze this case under the so-called 'same evidence' test, which is frequently used to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments under separate statutes." (citing Blockburger, 284 U.S. at 299). For example, the Court of Criminal Appeals of Texas stated: "Both parties' arguments are predicated on the assumption that the proper analysis includes the application of the Blockburger test.... However, we employ that analysis only when the charged conduct involves multiple offenses in different statutory provisions that are the result of a single course of conduct." Loving v. State, 401 S.W.3d 642, 645 (Tex. Crim. App. 2013); see also State v. Smith, 436 S.W.3d 751, 768 (Tenn. 2014) ("Generally, we do not apply the Blockburger test when addressing a unit-of-prosecution claim.").
¶ 48. Instead, "[wjhere two violations of the same statute rather than two violations of different statutes *786 are charged, courts determine whether a single offense is involved not by applying the Blockburger test, but rather by asking what act the legislature intended as the 'unit of prosecution' under the statute." United States v. Weathers, 186 F.3d 948, 952 (D.C. Cir. 1999). Stated otherwise, a court's inquiry becomes "what 'unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." Adel, 965 P.2d at 1074 (citations omitted); see also State v. Thompson, 200 P.3d 22, 28 (Kan. 2009) ("In a unit of prosecution case, the court asks how the legislature has defined the scope of conduct composing one violation of a statute. Under this test, the statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution."); Loving, 401 S.W.3d at 645 (reasoning, "whether the Legislature intended for the separate statutory subsections in a single statute to constitute distinct offenses" is the question); State v. Ravell, 922 A.2d 685, 689 (N.H. 2007) (Duggan, J., dissenting) ("Where, as here, a defendant asserts a double jeopardy violation, arguing that he is being punished multiple times under the same statute for the same offense, courts must inquire what 'unit of prosecution' was intended by the legislature as the punishable act.").
f 49. Therefore, in multiplicity challenges grounded in multiple charges under a single statute, courts interpret the statute at issue to determine if the legislature authorized multiple convictions.
¶ 50. In the present case, Pal alleges that he was impermissibly charged with two violations of a single statute. Accordingly, this case could be framed as a unit of prosecution case. And, as discussed above, under a unit of prosecution analysis, the sole question would be *787 whether the legislature intended to authorize multiple punishments through a single statute.
¶ 51. However, as the Majority opinion correctly notes, the statute at issue in the present case is designed to confer a duty towards each individual harmed by a driver's actions.[3] And, as a result, the legislature authorized the unit of prosecution to be one conviction for each victim.
f 52. Because the Majority opinion proceeds under well-established Wisconsin law, I join the Majority opinion in full. I respectfully concur in order to encourage future parties to consider a unit of prosecution analysis for multiplicity challenges based on multiple charges under a single statute.
¶ 53. I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

 For a more thorough explanation of why Wisconsin's two-prong multiplicity analysis may be reconsidered in unit of prosecution cases, see Michelle A. Leslie, Note, State v. Grayson, Clouding the Already Murky Waters of Unit of Prosecution Analysis in Wisconsin, 1993 Wis. L. Rev. 811, 824—25 ("The first prong of the Robe test, 'identical in law and in fact,' is not useful in the continuing offense, unit of prosecution context. The identical in law portion is always satisfied and therefore never determinative, since each charge is brought under the identical statutory provision. The identical in fact portion is equally uninformative, but in a more subtle manner. The prosecutor, in deciding on the challenged unit of prosecution, must divide the continuing conduct into distinct segments (usually temporal segments). Implicit in that division, however, are different factual contexts, controlled solely by the prosecutor's unit of prosecution choice. Thus, identical in fact will never be satisfied.").

 The Supreme Court's decision in Ladner v. United States, 358 U.S. 169 (1958) is illustrative. In Ladner, the defendant was convicted "of assaulting two federal officers with a deadly weapon" in violation of a single statute. Id. at 170. The defendant received separate convictions for each officer that was harmed. Id. at 170-71. The Court had to address whether "the wounding of two federal officers by the single discharge of a shotgun would constitute a separate offense against each officer under the statute." Id. at 171. The Court did not apply the Blockburger analysis; instead, the Court focused solely on the text of the statute. Id. at 172.

 Majority op., ¶ 24.